# United States Court of Appeals for the Federal Circuit

---

(Reexamination Nos. 90/006,495 and 95/000,020)

## IN RE NTP, INC.

---

2010-1277

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: August 1, 2011

---

BRIAN M. BUROKER and OZZIE A. FARRES, Hunton & Williams, LLP, of Washington, DC, argued for appellant. With them on the brief were YISUN SONG; and ROBERT A. KING, of Atlanta, Georgia.

NATHAN K. KELLEY, SCOTT C. WEIDENFELLER and WILLIAM LAMARCA, Associate Solicitors, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With them on the brief was RAYMOND T. CHEN, Solicitor.

---

Before GAJARSA, CLEVENGER, and MOORE, *Circuit Judges*.

GAJARSA, *Circuit Judge*.

This is an appeal from the Board of Patent Appeals and Interferences ("Board"). NTP, Inc. ("NTP") appeals the Board's decision affirming the U.S. Patent and Trademark Office's ("PTO") rejection of all 764 claims of U.S. Patent No. 6,317,592 ("the '592 patent") during reexamination. The Board held that all claims of the '592 patent were anticipated by U.S. Patent No. 6,219,694 issued to Lazaridis ("Lazaridis"), which qualified as prior art because the Board concluded that the '592 patent was not entitled to claim priority to U.S. Patent Application No. 09/161,462, the parent application of the '592 patent ("Parent Application").

NTP appeals three specific issues: (1) whether the Board properly construed the term "destination processor"; (2) whether priority is properly considered during reexamination; and (3) if it is, whether determining priority is appropriate in this case. After considering all of the issues, for the reasons discussed below, we affirm the Board's decision.

BACKGROUND

This is one of eight related appeals concerning the reexamination proceedings of eight NTP patents. Seven of those appeals are disposed of in *In re NTP, Inc.*, (2010-1243, -1254, -1263, -1274, -1275, -1276, and -1278) (Fed. Cir. August 1, 2011) ("*NTP Seven Appeal Op.*"), which was decided contemporaneously herewith and provides a more detailed background of the appeals. In order to avoid repetition, this opinion reviews only the facts necessary to the resolution of this appeal.

The application that matured into the '592 patent was filed on December 6, 1999 and claims a priority date of May 20, 1991 through a series of continuation applica-

tions, as disclosed on the cover page of the '592 patent. The Parent Application to the '592 patent was filed on September 28, 1998.[1] Reduced to its simplest form, the invention described in the '592 patent is an electronic mail system that transmits an electronic mail message from an originating processor to a destination processor through a radio frequency ("RF") data transmission network. *Id.* col.17 ll.25-32. Prior to reaching the destination processor, the electronic mail message is stored in a RF receiver, which sends the message to the destination processor when the two are connected. *Id.* col.17 ll.32-34, 41-43. In some embodiments of the invention, the electronic mail message is transmitted through the data transmission network using a gateway switch and/or an interface switch. *Id.* col.18 ll.1-8, col.19 ll.9-15. A gateway switch stores information that it receives from an originating processor before that information is transmitted to the destination processor. *Id.* col.19 ll.9-15. An interface switch connects the gateway switch to the RF transmission network to transmit the stored information. *Id.* col.19 ll.19-23.

For this appeal, the key feature of the claimed invention is the "destination processor." Claim 1 is representative of the independent claims of the '592 patent with regard to this key feature:

> 1. In a communication system comprising a wireless system which communication system transmits electronic mail inputted to the

---

[1]    The Parent Application claims descendancy by continuation from U.S. Patent Application No. 08/844,957, filed on April 23, 1997, which is a continuation of U.S. Patent Application No. 08/443,430, filed on May 18, 1995, which is a continuation of U.S. Patent Application No. 07/702,939, filed on May 20, 1991. '592 patent at [63].

communication system from an originating device, mobile processors which execute electronic mail programming to function as a destination of electronic mail, and a *destination processor* to which the electronic mail is transmitted from the originating device and *after reception of the electronic mail by the destination processor, information contained in the electronic mail and an identification of a wireless device in the wireless system are transmitted by the wireless system to the wireless device and from the wireless device to one of the mobile processors connected thereto*, the originating device comprising:

> a programmed processor which executes electronic mail programming to originate the electronic mail, the electronic mail containing an address of the destination processor and the information contained in the electronic mail to be transmitted to the destination processor.

*Id.* col.28 ll.11-29 (emphases added). NTP disputes the meaning of "destination processor," namely whether a destination processor performs any action after receiving an electronic mail message.

As originally issued, the '592 patent contained 665 claims, including twelve independent claims. On December 26, 2002, the PTO initiated reexamination proceedings,[2] during which NTP added dependent claims 666-

---

[2] Research in Motion, Ltd. ("RIM"), after being sued by NTP for infringing the '592 patent (among other NTP patents), initiated reexamination proceedings concerning the '592 patent on May 29, 2003. On August 9, 2004, RIM's inter partes reexamination proceedings were merged with the proceedings initiated by the PTO. RIM agreed to forego further participation in the reexamina-

764. On February 1, 2006, the examiner issued an Action Closing Prosecution, rejecting all 764 claims as anticipated, obvious, lacking written description, and/or lacking enablement. The examiner found that eight references anticipated or rendered obvious some or all of the claims. Seven of these references antedated the '592 patent's claimed priority date of May 20, 1991 under 35 U.S.C. §§ 102(b) or (e).[3] Lazaridis, the eighth reference, has a filing date of May 29, 1998. It could not be a prior art reference if the '592 patent was entitled to claim the May 20, 1991 priority date. The examiner, however, concluded that the claims of the '592 patent were not entitled to the earlier priority date because the written description of the Parent Application did not support a destination processor that could retransmit the contents of an electronic mail message, as was claimed in the '592 patent. Therefore, Lazaridis was prior art under 35 U.S.C. § 102(e) and anticipated all 764 claims.

NTP subsequently appealed this decision to the Board, which affirmed the examiner's determination

---

tion proceedings as a condition of a settlement agreement with NTP.

[3] Four of the seven references are prior art under 35 U.S.C. § 102(b): Gary E. Ford, *Beginner's Guide to TCP/IP on the Amateur Packet Radio Network Using the KA9Q Internet Software*, (May 9, 1990); Stig Kaspersen et al., *Norwegian Telecommunication Administration, Mobile Data Network Description*, (1989) (Volumes 1-4, 6-8); Richard D. Verjinski, *PHASE, A Portable Host Access System Environment*, 3 IEEE Military Communications Conference 1989, 0806-09 (1989); and Bdale Garbee, *The KA9Q Internset Software Package*, (1989). The remaining three references are prior art under 35 U.S.C. § 102(e): U.S. Patent No. 5,159,592 ("Perkins"), filed on October 29, 1990; U.S. Patent No. 5,917,629 ("Hortensius"), filed on October 29, 1990; and U.S. Patent No. 4,972,457 ("O'Sullivan"), filed on January 19, 1989.

concerning the priority date of the '592 patent.[4]   *In re NTP, Inc.*, No. 2008-004606, at 130-35 (B.P.A.I. Nov. 10, 2009) ("*Board Op.*").   First, the Board construed the term "destination processor" to mean the "particular end node device to which the intended user recipient of electronic mail has immediate and direct physical access when accessing and viewing electronic mail." *Id.* at 28.   The Board rejected NTP's argument that the "destination processor" could also be an intermediate node device, such as a gateway or interface switch. *Id.* 27-28.   The Board explained that the written description consistently refers to destination processors, gateway switches, and interface switches separately.   *Id.* at 27.   Further, neither the gateway switches nor the interface switches allowed the user to review a message without further transmission. *Id.*

Next, the Board determined that the written description of the Parent Application "does not have [a] written description for wireless transmission of information contained in an electronic mail after a destination processor has received the electronic mail." *Id.* at 133.   Claim 1 requires that after the destination processor receives the electronic mail message, it then transmits that electronic mail message to a wireless device and then to a mobile processor.   '592 patent, col.28 ll.11-29.   The written description of the Parent Application, however, only described a destination processor as having the ability to receive an electronic mail message—nothing more. *Board Op.* at 132-33.   The Board rejected NTP's argument to define destination processor as including the gateway or interface switch based on its construction of destination

---

[4]    The Board also found that various other claims of the '592 patent were anticipated or obvious but no single reference or combination of references invalidated all claims.

processor. *Id.* Therefore, the '592 patent was not entitled to claim priority to the Parent Application and could not claim the priority date of May 20, 1991.

Finally, because the '592 patent's priority date was its filing date of December 6, 1999, the Board found that Lazaridis—as 35 U.S.C. § 102(e) prior art—anticipated all claims of the '592 patent. *Id.* at 135. The Board did not engage in a substantive analysis of Lazaridis because NTP did not "argue against the substantive merit of the anticipation rejection based on Lazaridis," but only its availability as prior art. *Id.* at 122. NTP timely filed an appeal with this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

This court reviews questions of law, such as claim construction and statutory interpretation, *de novo. In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004); *In re Kathawala*, 9 F.3d 942, 945 (Fed. Cir. 1993). The Board's factual determinations, including what the examiner considered during prosecution, are reviewed for substantial evidence. *See In re Swanson*, 540 F.3d 1368, 1381 (Fed. Cir. 2008); *In re Gartside*, 203 F.3d 1305, 1315 (Fed. Cir. 2000) ("Because our review of the Board's decision is confined to the factual record compiled by the Board, we accordingly conclude that the substantial evidence standard is appropriate for our review of Board factfindings.").

On appeal, NTP does not dispute that Lazaridis anticipates all the claims of the '592 patent if the '592 patent is not entitled to claim the priority date of its Parent Application, thus breaking the heredity chain of priority that dates to May 20, 1991. Instead, NTP premises its argument on the basis that the Board erred in construing destination processor. Under NTP's proposed construc-

tion, the written description of the Parent Application would support the claimed functions of the destination processor and thus entitle the '592 patent to claim an earlier priority date. NTP also argues that the Board erred in deciding that the '592 patent was not entitled to claim priority to its Parent Application during reexamination. NTP asserts that the PTO could not consider whether the '592 patent was entitled to an earlier priority date because (1) 35 U.S.C. § 301 generally prohibits such an analysis; and (2) 35 U.S.C. § 303(a) prohibits such an analysis in this particular case because the PTO had already considered the issue in the original prosecution. Although none of these arguments has legal merit, we discuss each in turn.[5]

## I.

The Board construed the term "destination processor" to mean the "particular end node device to which the intended user recipient of electronic mail has immediate and direct physical access when accessing and viewing electronic mail." *Board Op.* at 28. NTP asserts that this construction is incorrect and proposes that "destination processor" means "any processor that receives email, processes the email and then transmits the email to another destination." Appellant's Br. 35. If the claim is construed as NTP proposes, it would be able to maintain its claimed priority date of the Parent Application.

---

[5] NTP also argues that the '592 patent was reduced to practice prior to October 29, 1990, thus antedating Lazaridis under 37 C.F.R. § 1.131. The companion opinion in this case disposes of this argument, finding that substantial evidence supported the Board's determination that NTP presented insufficient evidence to satisfy 37 C.F.R. § 1.131. *NTP Seven Appeal Op.* at 14-21.

In reexamination, "claims . . . are to be given their broadest reasonable interpretation consistent with the specification, and . . . claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art." *Am. Acad.*, 367 F.3d at 1364 (citation omitted). "Although the PTO gives claims the broadest reasonable interpretation consistent with the written description, . . . claim construction by the PTO is a question of law that we review de novo, . . . just as we review claim construction by a district court." *In re Baker Hughes, Inc.*, 215 F.3d 1297, 1301 (Fed. Cir. 2000) (internal citations omitted). In this case, the Board's construction of "destination processor" is legally correct and is reasonable in view of the written description and how the written description would be interpreted by one of ordinary skill in the art.

The Board relied on the written description of the '592 patent in construing "destination processor." The system described in the '592 patent transmits electronic mail from an originating processor to a destination processor. '592 patent, col.17 ll.25-32. To do so, the system uses both gateway and interface switches. *Id.* col.18 ll.1-3, col.19 ll.12-15. A gateway switch "stor[es] information received from [an] originating processor prior to transmission of the information to the . . . destination processor." *Id.* col.19. ll.12-15. After receiving information from an originating processor, the gateway switch transmits the information to an RF information transmission network through the use of an interface switch. *Id.* col.19 ll.15-23. The interface switch "connects an electronic mail system and/or at least one additional processor to an RF data transmission network which transmits the information to a RF receiver which is connectable to the destination processor." *Id.* col.18 ll.3-8. The written description therefore makes clear that both the gateway switch and

the interface switch receive and transmit information. A user, however, cannot retrieve a message from either.

The destination processor receives the electronic mail message but does not retransmit the message. *See, e.g.*, *id.* col. 17 ll.42-44 ("The RF receiver automatically transfers the information to the destination processor . . . ."); *id.* col.18 ll.1-3 ("The present invention transmits electronic mail from an originating processor to at least one destination processor through an interface switch."); *id.* col.22 ll.22-23 ("Upon connection, the receiver 119 relays the information from the RF receiver to the destination processor."). Instead, the end user retrieves his or her electronic mail message through the destination processor. *Id.* col.3 ll.14-31. This retrieval does not occur at the interface or gateway switches. *See, e.g., id.* col.3 ll.14-18 ("Upon arrival of the information at the destination processor's *gateway switch* . . . [t]he information is typically stored . . . for later retrieval by the destination processor . . . ." (emphasis added)). Thus, the user does not retrieve the message at the gateway or interface switches—the message must be transmitted through the RF receiver to the destination processor for the user to retrieve it.

The Board properly relied on the written description in construing "destination processor." The written description clearly distinguishes between a destination processor, an interface switch, and a gateway switch. *See supra.* All three have distinct functions within the system. The written description only states that a message may be viewed at the destination processor and also distinguishes a destination processor from an interface switch and a gateway switch in that there is no disclosure of the destination processor further transmitting a message in the system.

NTP's proposed claim construction is not similarly supported. In fact, NTP's construction would exclude the destination processor itself. NTP's proposed construction requires that a destination processor "transmit[] the email to another destination." Appellant's Br. 33. There is no disclosure of the destination processor further transmitting an electronic mail message. This result would exclude a destination processor from the definition of "destination processor" and is clearly incorrect. *See Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1370 (Fed. Cir. 2005) (holding that the district court's construction was incorrect because it excluded a required element of the claim); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1370 (Fed. Cir. 2003) (same). NTP also relies on an expert declaration to argue that a person of ordinary skill in the art would understand a destination processor to include gateway and interface switches. Although the Board considered the declaration, the Board chose not to credit it because the expert's declaration was not premised on a proper claim construction analysis. *Board Op.* at 29. "The Board has discretion as to the weight to give declarations offered in the course of prosecution." *Am. Acad.*, 367 F.3d. at 1368 (citation omitted). Here, the Board did not abuse its discretion in discounting NTP's expert declaration. *See id.* (affirming the Board's decision to discount expert declaration concerning how a person of ordinary skill in the art would have understood the claim terms where the declaration "did not constitute persuasive evidence to support his conclusions").

Contrary to NTP's argument, the Board's construction of "destination processor" is correct and is supported by the written description, while NTP's is not. We therefore affirm the Board's construction of "destination processor." NTP does not dispute that, based on the Board's construc-

tion, the claims of the '592 patent are not supported by the written description of the Parent Application because it does not describe a destination processor transmitting messages. Thus, unless determining the appropriate priority date during reexamination is prohibited—either outright or in this particular case—the claims of the '592 patent are anticipated by Lazaridis.

## II

Reexamination proceedings, governed by 35 U.S.C. §§ 301 *et seq.*, are intended to "permit any party to petition the [PTO] to review the efficacy of a patent, following its issuance, on the basis of new information about pre-existing technology that may have escaped review at the time of the initial examination." H.R. No. 66-1307, 96th Cong., 2d Sess. (1980), 3-4. The scope of reexamination proceedings is limited to "substantial new question[s] of patentability," 35 U.S.C. § 303(a), which are questions that have not previously been considered by the PTO, *Swanson*, 540 F.3d at 1379. These new considerations must be based only on "prior art consisting of patents or printed publications." 35 U.S.C. § 301; *see id.* § 302. Thus, other challenges to the patentability of original claims—such as qualification as patentable subject matter under § 101 or satisfaction of the written description and enablement requirements of § 112—may not be raised in reexamination proceedings.[6] *See id.* § 301; 37 C.F.R. §§ 1.552(c), 1.906(c). Moreover, during reexamination, the patent claims no longer carry the statutory presumption of validity. *In re Etter*, 756 F.2d 852, 858 (Fed. Cir. 1985) (en banc).

---

[6] Section 112 can be used to evaluate claims that were added during reexamination. 37 C.F.R. §§ 1.552(a), 1.906(a).

A.

We first address NTP's argument that § 301 prohibits the examiner from making a priority determination during reexamination. Reexamination proceedings are intended to have the same focus as original prosecution, *Etter*, 756 F.2d at 857, and are procedurally similar, *see* 35 U.S.C. §§ 305, 314. During reexamination, the examiner reviews the claims in view of various prior art patents and printed publications. *See id.* § 301. If the examiner believes that a reference invalidates one or more claims of the patent, he or she issues an office action to the patentee explaining the reasons a reference is invalidating. *See* 37 C.F.R. § 1.104. In order to maintain those claims, the patentee must then traverse the examiner's arguments. *See id.* §§ 1.111, 1.550. An argument can be made that the patent is entitled to a priority date that antedates the asserted reference. NTP argued that its antecedent date was able to overcome Lazaridis.

NTP, however, urges that the analysis stops here. In other words, NTP submits that once the patentee claims entitlement to an earlier priority date, the examiner must accept the applicant's argument without challenge. For support, NTP relies on *Patlex Corp. v. Quigg*, 680 F. Supp. 33, 37 (D.D.C. 1988), where the district court stated that "the reexamination statute does not contemplate a 'reexamination' of the sufficiency of a disclosure. Rather, it is limited to reexamination of patentability based on prior art patents and publications." *Patlex*, however, does not support NTP's argument for several reasons.

First, a district court decision may inform the issue but is not binding precedent on this court. *See Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 891 (Fed. Cir. 1999). Second, the district court precluded review of priority because that issue—along with enable-

ment—had been decided during the patent's original prosecution. *Patlex*, 680 F. Supp. at 36. During the patent's original prosecution, the examiner stated in the Reasons for Allowance that he had considered "[u]ndue breadth" and "sufficiency of the disclosure" and concluded that the written description of the great-grandparent met the enablement requirement. *Id.* (citations omitted).

Third, and most importantly, a patent's claims are not entitled to an earlier priority date merely because the patentee claims priority. *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 459 (Fed. Cir. 1986) (explaining that "the art must have existed as of the date of invention, presumed to be the filing date of the application until an earlier date is proved"); *see also In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995) (holding that a reference was properly considered prior art because the earlier filed application did not support the patent's claims, thereby precluding reliance on its earlier priority date). Rather, for a patent's claims to be entitled to an earlier priority date, the patentee must demonstrate that the claims meet the requirements of 35 U.S.C. § 120.

Nothing in 35 U.S.C. §§ 301 *et seq.* entitles a patentee to a claim of right to its earliest priority date. Under § 120, a patent is entitled to the priority date of an earlier filed application if (1) the written description of the earlier filed application discloses the invention claimed in the later filed application sufficient to satisfy the requirements of § 112; (2) the applications have at least one common inventor; (3) the later application is filed before the issuance or abandonment of the earlier filed application; and (4) the later application contains a reference to the earlier filed application. In addition, if the later filed application claims priority through the heredity of a chain of applications, each application in the chain must satisfy

§ 112.  *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997).

Thus, when a patentee argues that its claims are entitled to the priority date of an earlier filed application, the examiner must undertake a priority analysis to determine if the patentee meets the requirements of § 120.  There is no statutory limitation during a reexamination proceeding prohibiting the examiner from conducting a priority analysis.  Otherwise, the examiner would be stripped of a critical legal tool needed in performing a proper reexamination.  Nothing in §§ 301 *et seq.* prohibits an examiner from determining whether or not a priority date was properly claimed during the original examination of the application.

## B.

NTP alternatively argues that even if priority may be properly analyzed during reexamination proceedings, it is prohibited in the instant case by § 303 because the examiner in the original prosecution had already considered whether the written descriptions in the Parent Application and the '592 patent supported the claims.  Relative to this issue, NTP makes two arguments.  First, NTP argues that because the examiner did not deny the '592 patent's priority claim, that examiner must have considered the issue in accordance with the Manual for Patent Examining Procedures ("MPEP") § 2163, which requires the examiner to consider whether the written description supports the claims.  Second, NTP asserts that the examiner determined that the written description of the '592 patent supported the claims during the original prosecution, and therefore, he implicitly determined that the '592 patent was entitled to claim priority to the Parent Application because both have the same written description.  Neither of these arguments has merit.

NTP's first argument relies on the presumption that the examiner considered all the evidence before him during the original prosecution. Prior to 2002, this court interpreted § 303(a) to permit reexamination "only . . . for those instances in which the examiner did not have all of the relevant prior art at his disposal when he originally considered the patentability of an invention." *In re Portola Packaging, Inc.*, 110 F.3d 786, 790 (Fed. Cir. 1997), *superseded by statute* Pub. L. 107-273, § 13105, 116 Stat. 1758, 1905-06 (Nov. 2, 2002) ("2002 Amendment"). In other words, if a reference was cited during the original prosecution, the examiner was presumed to have considered it, as the regulations require. *Id.*

In 2002, Congress amended § 303(a) to explain that "[t]he existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office." 2002 Amendment. In *Swanson*, we explained that this amendment meant that "Congress . . . has now rejected this presumption of full consideration. Section 303(a) as amended . . . requires a more context-specific approach that is based on an analysis of what the PTO actually did." 540 F.3d at 1380. Thus, there is no presumption that the examiner considered whether the written description of the Parent Application supports the claims of the '592 patent simply because the MPEP requires it.

Whether the examiner actually considered this issue can only be determined by reviewing the prosecution history. The history here fails to support NTP's contention that the examiner made such a considered judgment. Deciding whether a patent application satisfies § 112 requires a distinct and separate analysis from deciding whether that application satisfies § 120. When an examiner decides whether an application satisfies § 112, the

examiner reviews only the application. Deciding whether that same application is entitled to an earlier priority date requires the examiner to determine whether pending claims are supported by the written description of the parent application. 35 U.S.C. § 120. While a continuation application is required to have an identical written description to that of its parent, this can only be determined by examining the parent application. Here, it is undisputed that the examiner made no such examination of the Parent Application. Indeed, "[i]n the absence of an interference or rejection which would require the PTO to make a determination of priority, the PTO does not make such findings as a matter of course in prosecution." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008) (footnote omitted).

NTP appears to acknowledge this deficiency in its argument and thus takes a different tack, arguing that the examiner implicitly found that the '592 patent, a continuation, was entitled to claim priority to its Parent Application because the examiner found that the written description supported the '592 patent's claims. Yet the evidence on which NTP relies to demonstrate that the examiner considered whether the written description of the '592 patent supports its claims is inadequate. NTP relies on three statements in the prosecution history to support its argument. The first is from an interview summary, where the examiner stated that "[a]pplicant further pointed out support within the specification for the newly proposed features." J.A. 1260. The second statement appears in an amendment and refers to the interview and states that "support for the claimed subject matter was discussed at the interview and included a reference to the subject matter [citing specification]." J.A. 1307. The third statement is also in an amendment and states that "[s]upport for such computer program claims

can be found in the Appendix of the present application . . . ." J.A. 1316.

Whether an examiner considered an issue must be context-specific, and here, there is no evidence that the examiner actually considered whether the claims of the '592 patent satisfy the requirements of § 112. In cases where we have determined the examiner to have considered an issue during the original prosecution, the issue was squarely before the examiner. For example, in *Recreative Technologies*, the examiner used the same reference during the original prosecution and the reexamination proceedings to reject the patent's claims for obviousness. *In re Recreative Techs. Corp.*, 83 F.3d 1394, 1398 (Fed. Cir. 1996). This court found that the reexamination was improper because "[t]he question of patentability in view of the . . . reference was decided in the original examination, and thus it can not be a substantial new question." *Id.*; *cf. WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999) ("The burden on the party asserting obviousness is more easily carried when the references on which the assertion is based were not *directly considered* by the examiner during prosecution." (emphasis added)). In contrast, in *Swanson*, this court found that a reference relied on in the original prosecution could create a substantial new question of patentability where the reference was used for a different purpose during reexamination. 540 F.3d at 1380-81.

In this case, the examiner's lack of consideration of § 112 is even clearer than in *Swanson*. The statements that NTP relies upon merely show that the applicant asserted that the written description supported his claims, not whether the examiner actually considered this issue. The examiner issued no rejection based on § 112, nor did the examiner make an affirmative statement that the claims of the '592 patent satisfied § 112, as the exam-

iner did in *Patlex*. Although an examiner does not dispute every single statement an applicant makes—and, of course, the applicants are required to conduct these proceedings with candor and good faith—this does not constitute an admission by the examiner that he considered and accepted these statements as established. As Congress acknowledged, examiners have limited time to review each application and cannot be expected to fully address every possible issue before them. H.R. Rep. 107-120 (June 28, 2001) ("[T]he PTO examiner only has a few precious hours to review the application before she is required to make a decision on its grant." (footnote omitted)). Allowing any statement made by an applicant during prosecution to suffice for "consideration" of an issue would reintroduce the error of *Portola Packaging*. Based on the evidence provided by NTP, the examiner did not consider either the priority claim of the '592 patent based upon the Parent Application or whether its claims satisfied the requirements of § 112.

## III.

We hold that the Board's claim construction of destination processor was correct; and that priority can be considered and determined during reexamination proceedings, and that here, such a determination was proper because the examiner did not consider priority during the original prosecution. Therefore, the '592 patent was not entitled to claim the priority date of the Parent Application, and as a result, Lazaridis is prior art under § 102(e). As NTP does not dispute that the claims of the '592 patent are anticipated by Lazaridis under § 102, this court affirms the Board's decision invalidating all claims of the '592 patent as anticipated by Lazaridis.

CONCLUSION

For the foregoing reasons, we affirm the decision of the Board.

**AFFIRMED**

COSTS

No costs.