NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IPCOM GMBH & CO.,**
*Appellant*

**v.**

**HTC CORPORATION,**
*Appellee*

---

2015-1754

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in No. 95/001,193.

---

Decided: July 11, 2016

---

MEREDITH MARTIN ADDY, Tabet DiVito & Rothstein, LLC, Chicago, IL, argued for appellant. Also represented by MATTHEW MICHAEL HOLUB, Katten Muchin Rosenman LLP, Chicago, IL; JEFFREY A. FINN, Finn IP Law, PC, Los Angeles, CA.

MICHAEL A. OBLON, Perkins Coie, LLP, Washington, DC, argued for appellee. Also represented by DAN L. BAGATELL, TYLER R. BOWEN, Phoenix, AZ.

---

Before PROST, *Chief Judge,* PLAGER and LOURIE, *Circuit Judges.*

PROST, *Chief Judge.*

This appeal is from a decision by the United States Patent and Trademark Office Patent Trial and Appeal Board ("Board") in an inter partes reexamination of U.S. Patent No. 7,043,751 ("'751 patent"). The '751 patent was issued to Robert Bosch GmbH in May 2006 and was later assigned to IPCom GmbH & Co. ("IPCom"). In 2009, HTC Corporation ("HTC") requested inter partes reexamination of the '751 patent and the examiner rejected all claims as anticipated and/or obvious in view of the prior art. The Board affirmed all rejections. On appeal are only three claims: claims 6, 26, and 30. For the reasons stated below, we affirm the Board's rulings.

## BACKGROUND

Cell phones communicate with cell towers by sending or receiving data over a shared "channel," such as a "random access channel" ("RACH"). However, if many phones try to use the RACH at the same time, the channel may become overloaded, and some messages will not be transmitted to the cell tower. To reduce overload, cellular networks can manage access to the channel and thereby limit the number of phones that can transmit messages over the channel at a given time.

The '751 patent describes a method and system for allocating access rights to channels in a wireless network. '751 patent col. 1 ll. 9–11. At given times, the network provides "access authorization data" to cell phones (also called "subscriber stations") within the network by broadcasting "information signals" over a signaling channel. *Id.* at col. 4 ll. 41–45. A phone within the network compares the access authorization data with stored values in the phone to determine whether it has been granted

access to the channel. *Id.* at col. 5 ll. 20–24; col. 7 ll. 16–22. As the volume of phones and transmissions increases, the network adjusts the access authorization data parameters so fewer phones can access the channel at a given time.

There are two types of access authorization data described in the '751 patent: "access class data" ("ACD") (or "access class information" ("ACI")) and an "access threshold value" ("ATV"). *Id.* at col. 1 ll. 22–64. ACD restricts network access based on the phone's "user class," which is the class assigned to the phone by its "subscriber identification module" (SIM card). A phone seeking access to the network would perform an "access class test," whereby it would compare its user class to the ACD provided by the network to determine if it was granted access. *Id.* Different phones have different user classes; for example, a phone belonging to an emergency responder may have a higher-priority class than a phone belonging to another user. *Id.* Thus, the emergency responder's phone would be more likely than that of another user to be granted access to the network at times of overload. *Id.*

The network may also provide an ATV, which restricts access based on a random distribution. Using an ATV, a phone seeking access to the network would perform a random number test, whereby the phone would generate a random number and compare that number to the broadcast ATV to determine whether it is granted access. *Id.* at col. 5 ll. 16–25.

The '751 patent teaches that when a phone wants to send a message, the phone first determines whether the access authorization data provided by the network includes ACD, an ATV, or both. *Id.* at col. 1 ll. 25–29, 45–64. If only ACD is provided, the phone only performs the access class test. *Id.* at col. 6 l. 65–col. 8 l. 5. If the network only provides an ATV, the phone only performs the random number test. *Id.* at col. 5 l. 36–col. 6 l. 64. If both

ACD and an ATV are provided, the phone first performs the user class test, and then, if that fails, it performs the random number test. *Id.* at col. 8 ll. 6–27. The phone repeats this process each time it wants to transmit a message.

The relevant pieces of prior art are the GSM Specifications. GSM (the "Global System for Mobile Communications") is a periodically-updated standard developed by the European Telecommunications Standards Institute to describe protocols for cellular networks. At the time of the filing of the '751 patent, the March and October 1998 GSM 04.60 Specifications (collectively, the "GSM Specifications") were in effect. Relevant to this appeal, the GSM Specifications disclose techniques by which a phone can access and transmit information over a channel (called the "PRACH"). According to the GSM Specifications, for a phone to gain access to the PRACH, it would first need to obtain permission to access the network through an access class test. After passing the access class test, the phone would need to pass an additional test before it could transmit messages over the PRACH. The GSM Specifications refer to this as "packet access" control and include a "packet access procedure" that compares an ATV (called a "persistence level") to a random number to determine whether a particular phone can transmit messages over the network. Thus, a phone would generate a random number and compare it to the persistence level; if the random number is greater than or equal to the persistence level value, then the message would be transmitted. The phone would repeat this process every time it wants to send a message over the network.

This case began with a declaratory judgment lawsuit filed by HTC against IPCom, to which IPCom responded by counterclaiming for infringement of the '751 patent. In 2012, the district court granted HTC's motion for partial summary judgment of noninfringement. IPCom appealed that ruling and we affirmed the district court. While the

district court case was pending, HTC filed a request for inter partes reexamination of all 13 claims of the '751 patent based on anticipation and obviousness in view of the GSM Specifications alone or in combination with secondary references. The United States Patent and Trademark Office granted the request and rejected all claims as unpatentable. In response, IPCom moved to add new claims 14–31 and later amended many of those claims in response to rejections. The examiner again rejected all claims, first in an Action Closing Prosecution, and then, after IPCom responded, in a Right of Appeal Notice. IPCom appealed to the Board, which affirmed the examiner's rejections. IPCom then requested reconsideration, but the Board denied the request. IPCom then timely appealed to us. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) (2012).

## DISCUSSION

We review the Board's legal determinations de novo and its underlying factual determinations for substantial evidence. *Rambus Inc. v. Rea*, 731 F.3d 1248, 1251 (Fed. Cir. 2013). Anticipation is a question of fact and thus the Board's anticipation determination is reviewed for substantial evidence. Also, during reexamination, claims are given "their broadest reasonable interpretation consistent with the specification." *In re NTP, Inc.*, 654 F.3d 1268, 1274 (Fed. Cir. 2011).

There are three claims on appeal: claims 6, 26, and 30. Claims 6 and 26 are representative of the issues here. Claim 6 recites, in relevant part:

> A method for allocating *rights of access* to at least one telecommunications channel . . . comprising the steps of . . . comparing the access threshold value with a random number . . . and granting a *right of access* to a telecommunications channel of the at least one subscriber station as a function of an outcome of the comparison; and further com-

prising asking . . . whether the access authorization data include . . . access class information . . . in which case . . . the at least one subscriber station is assigned to an at least one predetermined user class to which *access* to at least one telecommunication channel . . . is *granted.*

'751 patent at claim 6 (emphases added). Claim 26 recites, in relevant part,

A subscriber station to which an access to at least one telecommunication channel . . . can be granted, comprising: . . . an evaluation unit . . . , the evaluation unit for *asking . . . , on the basis of the access class data*, whether the access authorization data include an access threshold value for comparison of the access threshold value with a random number or a pseudo-random number, and for ascertaining, as a function of an outcome of a comparison whether *an access* of the at least one subscriber station to the at least one telecommunications channel is enabled.

J.A. 4900 (emphases added). IPCom contends that the Board erred in construing the terms "access" and "right of access" in claims 6, 26, and 30 and the phrase "asking . . . on the basis of the access class data" in claim 26. We take each argument in turn.

With respect to claims 6 and 30, the Board found that they were anticipated by the GSM Specifications because the GSM Specifications disclosed granting access to a network through the use of a random number test using ATV. IPCom argues that was erroneous. It contends that the GSM Specifications teach that access to the network is granted solely through the access class test (using ACD), whereas the '751 patent teaches that access to the network can be granted through either the class test (using ACD) *or* the random number test (using an ATV). Thus, IPCom argues that the GSM Specifications cannot

anticipate the '751 patent because it does not disclose both options for granting access.

IPCom is incorrect. It is true that in the first step of the technique disclosed in the GSM Specifications, a phone uses ACD, not an ATV, to initially gain access to the network. But, the GSM Specifications further disclose that after a phone has the permission to access the network, it still needs to use an ATV in order to gain permission to transmit a message over the network. And every time the phone wants to send a message, it needs to request access to the network again through a random number test using an ATV. As the Board determined, the claims merely refer to "right of access" and are not limited to the "initial" access to the network. Thus, under the broadest reasonable interpretation of the claims, the term "right of access" can be construed to include both the first request for access to the network and the subsequent requests to transmit messages over the network.

IPCom's arguments to the contrary are unavailing. IPCom contends that the claims only deal with the first attempt to gain access to the network and that everything that happens after the phone has gained such access is irrelevant, including attempted transmissions. But none of the citations it provides to the claim language or the specification support such a narrow reading. The claims generally refer to granting "rights of access" to the RACH or say that "access" to the RACH "is enabled" or "can be granted." The claims do not say whether that right of access includes only the initial permission to be on the network or if it also includes the ability to transmit messages over the network. Moreover, the '751 patent recognizes that a phone may need to make subsequent requests for access, stating:

> Before *each access* to the RACH 30 by the first mobile station 5, the evaluation unit 60 draws a random . . . number R and asks whether the ran-

> dom . . . number R is at least as great as the access threshold value S.  Only then is access to the [RACH] allowed.

'751 patent col. 5 ll. 20–25 (emphasis added).  Thus, reading the claims to cover more than merely the initial access to the network is consistent with the specification.

IPCom also argues that requiring a phone to pass tests before attempting a first transmission on the RACH is for "preventing" overload, whereas, in the event of data collision, requiring a phone to pass tests before making subsequent attempts to transmit on the RACH is for "relieving" existing overload.  IPCom contends that the '751 patent is directed to "preventing" overload and thus the "right of access" language can only refer to the first attempt to access the network.  But neither the claim language nor the specification make any distinction between "prevention" and "relief" of overload.  Indeed, the specification describes restricting access to "avoid[]" overload, *id.* at col. 4 ll. 10–12, and lists a number of ways to attain "relief of the [RACH]," *id.* at col. 10 ll. 24–41.  Because there is no meaningful difference between prevention and relief as explained in the '751 patent, IPCom's argument on this front is unpersuasive.  The Board thus correctly construed "right of access" under the broadest reasonable interpretation standard to include subsequent attempts to access the network to transmit a message.

IPCom also challenges the Board's ruling that claim 26 is anticipated by the GSM Specifications.  IPCom argues that the Board erred in construing the claim to cover "anything that happens *after* the 'asking' 'on the basis of access class data.'"  Appellant's Br. 49.  But the Board did no such thing.  Instead, the Board concluded that the claim requires nothing more than asking whether an ATV is present based on any aspect of the access class data.  It does not require, as IPCom argues, that the

"asking" depend upon "information encoded in the ACD." *Id.* at 50. IPCom improperly imports the preferred embodiment of the '751 patent—whereby a phone determines whether or not to use an ATV based on whether it was granted access using ACD—into the claims. As the Board noted, if IPCom wanted to limit the claims in such a manner, it could have. Instead, claim 26 merely requires, in some way, asking whether to look at an ATV based on ACD. Under the broadest reasonable interpretation, this claim is satisfied by the GSM Specifications, where access is initially determined on the basis of ACD and thereafter is based upon an ATV. We therefore conclude that the Board properly found claim 26 anticipated by the GSM Specifications.

## CONCLUSION

For the foregoing reasons, we affirm the Board's decision.

## **AFFIRMED**