NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: DAVID WALTER,**
*Appellant*

---

2016-2256

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 90/013,165.

---

Decided: August 21, 2017

---

STEVEN J. MILLER, The Miller Law Offices PLC, Miami, FL, and MARK TERRY, Office of Mark Terry, Miami, FL, argued for appellant.

PHILIP J. WARRICK, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Joseph Matal. Also represented by NATHAN K. KELLEY, THOMAS W. KRAUSE, JOSEPH GERARD PICCOLO, COKE MORGAN STEWART.

---

Before MOORE, SCHALL, and O'MALLEY, *Circuit Judges.*

SCHALL, *Circuit Judge.*

DECISION

David Walter appeals the decision of the Patent Trial and Appeal Board ("Board") in an *ex parte* reexamination proceeding involving U.S. Patent No. 7,513,711 ("the '711 patent"). *See Ex parte David Walter*, No. 2015-006121, 2015 WL 5144184 (P.T.A.B. Aug. 31, 2015). In its decision, the Board ruled that all twelve claims of the '711 patent lack adequate written description and are indefinite under 35 U.S.C. § 112. *Id.* at \*2–3. We *affirm*.

DISCUSSION

I.   Background

Mr. Walter is the sole inventor of the invention claimed in the '711 patent. *See* '711 patent at [76]. The invention relates to artificial reefs for cultivating marine life. *Id.*, col. 1 ll. 8–16. The reefs 10 generally comprise concrete walls 16 joined together to form a hollow interior. *Id.*, Abstract. The walls 16 contain stones 14 for supporting aquatic lifeforms:



*Id.*, Figs. 3, 4. The concrete walls 16 attach to an underlying "support structure" 12 having a base 22 and upwardly-extending "frame members." *Id.*, col. 1 ll. 36–39, Fig. 2. According to the patent, the reef can take any shape, including pyramidal, prismatic, and cylindrical arrangements. *Id.*, col. 1 ll. 49–51, col. 3 ll. 52–54, Figs. 2, 5, 7. The '711 patent originally issued with twelve claims,

one independent claim and eleven dependent claims. *Id.*, col. 4 ll. 26–64. The claims largely embody the foregoing features.

The Patent and Trademark Office began reexamining the '711 patent in 2014 at Mr. Walter's request. In those proceedings, the examiner initially rejected the issued claims as obvious over various prior art references. *See* J.A. 124–27. Mr. Walter responded by amending independent claim 1 to recite, *inter alia*, that the reef's claimed "support structure" was "block-like." *See* J.A. 154–55. Relying on an expert declaration from Steven J. Miller, *see* J.A. 178, Mr. Walter argued that the plain and ordinary meaning of "block-like" is a "solid support structure made up of discreet [sic] pieces or 'blocks' which[,] when joined together in some manner, assemble into a complete structure or apparatus." J.A. 164. Armed with this construction, Mr. Walter urged that the examiner's prior art references did not teach a "block-like support structure," as so construed. *See* J.A. 164–65. The text of amended claim 1 reads in full:

1.  An artificial reef comprising:

    a) a *block-like support structure* made of a plurality of frame members forming a base and frame members extending up from said base;

    b) attachable slab walls fabricated of a concrete material secured to said support structure forming a hollow interior, said walls having recesses to provide access into the hollow interior of said reef; and

    c) a plurality of soft stones embedded into said concrete walls, said soft stones are elevated beyond the face of said concrete walls to provide a greater surface area for marine life to bore and anchor into.

J.A. 24 (emphasis added).

Mr. Walter's amendment did not persuade the examiner. In his ensuing office action, the examiner maintained his obviousness rejections. J.A. 213–16. He also rejected the newly-amended claims as lacking adequate written description support and as indefinite. *Id.* As for the written description rejection, the examiner reasoned that the specification did not disclose a support structure that was "block-like." *Id.* Turning to indefiniteness, the examiner determined that the term "block-like" lacked reasonable certainty because Mr. Walter's proposed construction conflicted with the dictionary meaning of the term "block." *Id.* Citing to an internet dictionary, the examiner construed "block" to mean "a solid piece of material . . . *that has flat sides* and is usually square or rectangular in shape." *Id.* (emphasis added). Because the claimed "support structure" did not contain flat sides, the examiner reasoned, it could not be fairly described as "block-like." Mr. Walter disagreed with the examiner's findings and appealed the rejections to the Board. J.A. 397.

## II.  Proceedings Before the Board

Mr. Walter's opening brief to the Board challenged the examiner's rejections. On the issue of indefiniteness, Mr. Walter pointed to places in the specification where he believed one of ordinary skill could have ascertained the meaning of "block-like." J.A. 401–02. Mr. Walter also urged that his amended claims were consistent with the examiner's dictionary definition of "block." In Mr. Walter's view, the claimed "support structure" was "block-like" because the individual frame elements comprising the support structure—not the support structure itself—were "3-dimensional cuboid[s]" with "flat sides." J.A. 402. Mr. Walter did not rely on the construction of "block-like" that he had presented with his initial amendment based on the Miller declaration. Turning to the other rejections, Mr. Walter asserted that the examin-

er erred in his findings on obviousness and written description.

The examiner responded by reaffirming his construction of "block" and maintaining that a block must contain "flat sides." J.A. 452. Because the claimed support structure comprised wholly open faces without a flat side, the examiner concluded, the "block-like" term was indefinite because the amended claims used the term in a way contrary to its plain meaning. *Id.* The examiner was not persuaded by Mr. Walter's "3-dimensional cuboid" argument because, in the examiner's view, the '711 patent disclosed embodiments with noncuboid frame members. J.A. 458. Finally, the examiner observed that "block-like" is a term of degree, without objective criteria in the patent's intrinsic record for establishing the scope of the limitation. J.A. 458–59. The examiner also defended his remaining rejections.

In his reply, Mr. Walter continued to allege that the individual "frame elements" of the support structure satisfied the examiner's construction of "block." J.A. 482–83. According to Mr. Walter, the examiner's construction encompassed noncuboid frame elements because blocks "usually" take cuboid form but need not do so in every case. *Id.* In Mr. Walter's view, this understanding comported with the specification of the '711 patent, which depicted reefs taking a variety of shapes. *Id.* Once again, Mr. Walter did not refer to his initial construction of "block-like" submitted with Mr. Miller's declaration. *Id.*

The Board heard arguments on these issues on August 20, 2015. During the hearing, the Board inquired into the meaning of "block-like." Mr. Walter responded in a variety of ways. At first, Mr. Walter urged a construction of "block-like" similar to the one he proposed in his initial amendment—namely, that "block-like" meant "discrete pieces that have been put together for the purposes of providing support." J.A. 509 ll. 18–20. When

pressed on this construction, however, Mr. Walter altered his position and advanced the "cuboid" construction he had raised in his briefing. In particular, Mr. Walter urged a construction that "each one of [the individual] frame members is a block-like structure" because they are "cuboid-shaped." J.A. 511 ll. 12–17. When the Board asked Mr. Walter to clarify this position, he returned to his original stance that "block-like" is synonymous with "discrete." *See* J.A. 512–13.

Confronted with these arguments, the Board ruled that the term "block-like" is indefinite. *Ex parte Walter*, 2015 WL 5144184, at *2–3. According to the Board, "block-like" lacks reasonable clarity because the specification of the '711 patent uses the term in a manner "inconsistent with a proper understanding" of the word "block." *Id.* at *2. The Board also rejected Mr. Walter's argument that "block-like" referred to the individual "frame members," rather than the "support structure" as a whole. *Id.* at *3. As the Board reasoned, the claims recited a "*block-like support structure* made of a plurality of frame members," not a "support structure made of a plurality of *block-like frame members*." *Id.* (emphases added). The Board also affirmed the examiner's written description rejection and *pro forma* reversed the obviousness rejection on the grounds that it could not ascertain the meaning of the amended claims. *Id.* at *2–3.

Mr. Walter asked the Board to reconsider its decision, but the Board denied the request. *See* J.A. 4. In addition to reaffirming its prior findings on indefiniteness, the Board held that "block-like" is indefinite for the additional reason that it is a term of degree without sufficient guidance delimiting its scope. J.A. 3–4.

Mr. Walter timely appealed the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

### III. Standard of Review

The Board construes claims of an unexpired patent during reexamination proceedings under the "broadest reasonable construction." *In re CSB-Sys. Int'l, Inc.*, 832 F.3d 1335, 1340 (Fed. Cir. 2016) (citing *In re NTP, Inc.*, 654 F.3d 1268, 1274 (Fed. Cir. 2011)). We review the Board's ultimate claim construction *de novo*. *Id.* (citing *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840–41 (2015)). When the intrinsic record dictates the proper construction of a term, we review the Board's construction without deference. *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1278 (Fed. Cir. 2017) (citing *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015)).

Indefiniteness is a question of law this court reviews *de novo*. *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015) (citing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014)).

Compliance with the written description requirement is a question of fact we review for substantial evidence. *ULF Bamberg v. Dalvey*, 815 F.3d 793, 797 (Fed. Cir. 2016) (citing *Harari v. Lee*, 656 F.3d 1331, 1341 (Fed. Cir. 2011)). Substantial evidence justifies a finding if a reasonable mind might accept the evidence to support it. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

### IV. Analysis

#### A.

Mr. Walter has advanced several arguments on appeal. In his opening brief, he asserted that he acted as his own lexicographer and defined the term "block-like" during reexamination. *See* Appellant's Br. 15, 21, 23. Mr. Walter did not raise this argument before the Board, however, and expressly abandoned and disavowed it during oral argument before us. *See* Oral Argument at 3:24–4:18, 10:03–10:26 (No. 16-2256), http://

oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-2256.mp3. We therefore deem this argument waived.

Although Mr. Walter no longer relies on the Miller declaration as supporting his lexicography argument, he does contend that the declaration establishes how one of ordinary skill in the art would understand the term "block-like." Appellant's Br. 17–18, 23. In Mr. Walter's view, "block-like" is a term of art in the relevant field, and the Board erred by failing to credit Mr. Miller's testimony on this point. *Id.*

## B.

On the record before us, we agree with the Board that the term "block-like" is indefinite. We therefore affirm the decision of the Board.

At the outset, we decline to adopt the Board's implicit determination that a patent claim is indefinite because the specification uses a term differently from its dictionary definition. *See Ex parte Walter*, 2015 WL 5144184, at *2. The specification is "always highly relevant to the claim construction analysis. Usually, it is dispositive." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). If there is a conflict between the specification and a general purpose dictionary as to a claim's proper meaning, the specification controls. *Id.* at 1318–24.

Nevertheless, we agree that the term "block-like" renders Mr. Walter's claims indefinite in this case. A claim is indefinite under 35 U.S.C. § 112 when the intrinsic record of the patent "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) ("*Nautilus I*"). If a claim employs a term of degree, the intrinsic record must provide those skilled in

the art with "objective boundaries" with which to assess the term's scope. *Interval Licensing*, 766 F.3d at 1371. If it does not, the claim is indefinite. *Id.*

Here, "block-like" is a term of degree without any accompanying guidance in the intrinsic record for determining its scope. The term ostensibly covers a range of shapes that are sufficiently "like" a "block" and excludes those that are not. But nothing in the intrinsic record offers "objective boundaries" for ascertaining whether a given shape falls into either category. *See Interval Licensing*, 766 F.3d at 1371. And because the "present invention 10 can be fabricated *in any shape* without deviating from the objectives thereof," *see* '711 patent, col. 3 ll. 52–54 (emphasis added), determining whether a particular shape is "block-like" thus strikes us as devolving into a highly subjective inquiry depending "on the unpredictable vagaries of any one person's opinion." *Interval Licensing*, 766 F.3d at 1371 (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005)). When, as here, "nothing in the specification, prosecution history, or proper art provides any indication as to what range of [structures] is covered by the term," the claim is indefinite. *Amgen, Inc. v. Chugai Pharm. Co., Ltd.* 927 F.3d 1200, 1218 (Fed. Cir. 1991).

The prosecution history compounds this uncertainty, describing "block-like" in different and often inconsistent ways. During reexamination, for example, Mr. Walter asserted that the term meant having "discreet [sic] pieces conjoined . . . in some manner," J.A. 164, having "3-dimensional cuboid elements," J.A. 402, having "solid pieces of material with flat sides," J.A. 244, and encompassing "curved blocks," J.A. 482, among other formulations. Mr. Walter also vacillated between applying the "block-like" adjectival phrase to the individual "frame members," *see* J.A. 511 ll. 12–17, and other times to the "support structure" as a whole, *see* J.A. 164. These shifting positions make pinning down a construction of "block-

like" all the more elusive. And even if it were possible to harmonize all of Mr. Walter's statements, it is not enough "that a court can ascribe *some* meaning to a patent's claims; the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*." *Nautilus I*, 134 S. Ct. at 2130. Here, the term's ill-defined boundaries coupled with the patentee's erratic use of the term fails to inform skilled artisans about the scope of the invention with reasonable certainty. *Id.* at 2124. The term is indefinite.

Citing to Mr. Miller's expert declaration, Mr. Walter urges that "block-like" is a term of art in the structural engineering field. Appellant's Br. 12, 17–18, 23. We are not persuaded by this argument. *First*, Mr. Miller does not support his opinion with evidence or analysis, and his testimony is wholly conclusory. *See* J.A. 178 ¶ 6. "[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court," *Phillips*, 415 F.3d at 1318, and thus we give Mr. Miller's testimony no weight. *See SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1210 (Fed. Cir. 2013) (giving "no weight" to expert testimony in similar circumstances). *Second*, it is difficult to fault the Board for purportedly overlooking Mr. Miller's declaration when Mr. Walter never relied on it. In both his opening and reply briefs to the Board, Mr. Walter argued that the claims were consistent with the examiner's construction of "block" and did not urge that the phrase implicated a term of art. *See* J.A. 401–02, 482–83. Nor did Mr. Walter rely on Mr. Miller's declaration during the oral hearing before the Board. *See* J.A. 509–13. We therefore see no error in the Board's decision to disregard Mr. Miller's testimony.

For the foregoing reasons, we hold that amended independent claim 1 of the '711 patent is indefinite. Mr. Walter does not separately argue the definiteness of dependent claims 2–12, and thus we hold those claims to

be indefinite as well. *See Soverain Software LLC v. Newegg Inc.*, 728 F.3d 1332, 1335–36 (Fed. Cir. 2013) ("[P]recedent guides that absent some effort at distinction, the claims rise or fall together."); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1359 (Fed. Cir. 2000). Having determined that claims 1–12 of the '711 patent, as amended, are indefinite, we do not reach the issue of whether they are also unpatentable for failing to comply with the written description requirement under 35 U.S.C. § 112, first paragraph.

## CONCLUSION

For the foregoing reasons, we hold that claims 1–12 of the '711 patent, as amended during reexamination, are indefinite. We therefore affirm the Board's decision finding the claims unpatentable on that ground. In light of this holding, we do not reach the Board's decision on written description.

## **AFFIRMED**

### COSTS

Each party shall bear its own costs.