# United States Court of Appeals
# for the Federal Circuit

---

**UNILOC 2017 LLC,**
*Appellant*

**v.**

**HULU, LLC, NETFLIX, INC.,**
*Appellees*

**ANDREI IANCU, UNDER SECRETARY OF
COMMERCE FOR INTELLECTUAL PROPERTY
AND DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2019-1686

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2017-00948.

---

Decided: July 22, 2020

---

BRIAN MATTHEW KOIDE, Etheridge Law Group, Southlake, TX, argued for appellant. Also represented by JAMES ETHERIDGE, RYAN S. LOVELESS, BRETT MANGRUM.

NATHAN K. KELLEY, Perkins Coie, LLP, Washington, DC, argued for appellees. Also represented by DAN L.

BAGATELL, Hanover, NH; ANDREW DUFRESNE, Madison, WI; MATTHEW COOK BERNSTEIN, San Diego, CA; BOBBIE J. WILSON, San Francisco, CA; DANIEL T. SHVODIAN, Palo Alto, CA.

    FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor Andrei Iancu. Also represented by JOSEPH MATAL, THOMAS W. KRAUSE; MELISSA N. PATTERSON, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC. Also argued by JEFFREY ERIC SANDBERG, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC.

    ADAM HOWARD CHARNES, Kilpatrick Townsend & Stockton LLP, Dallas, TX, for amicus curiae Askeladden L.L.C. Also represented by JOHN STEVEN GARDNER, CHRIS WILLIAM HAAF, Winston-Salem, NC.

_____

Before O'MALLEY, WALLACH, and TARANTO, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* WALLACH.

Dissenting opinion filed by *Circuit Judge* O'MALLEY.

WALLACH, *Circuit Judge.*

    Appellant Uniloc 2017 LLC ("Uniloc") appeals the U.S. Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board's ("PTAB") denial of its motion for rehearing in the inter partes review ("IPR") of Uniloc's U.S. Patent No. 8,566,960 ("the '960 patent"), arguing that "[t]he PTAB misapprehended the law in concluding it is permissible in an IPR proceeding for the [PTAB] to consider a § 101 challenge" to Uniloc's proposed substitute claims ("the Substitute Claims"). J.A. 597; *see* J.A. 596–602 (Uniloc's Request for Rehearing). In denying Uniloc's request, the PTAB concluded that it may analyze § 101

patent eligibility for proposed substitute claims. *See Amazon.com, Inc. v. Uniloc Lux. S.A.* ("*Rehearing Denial*"), No. IPR2017-00948, 2019 WL 343802, at \*5 (P.T.A.B. Jan. 18, 2019). The USPTO Director designated the *Rehearing Denial* as precedential. *See id.*

Uniloc timely appealed under 35 U.S.C. §§ 141(c), 142, and 319. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A). We affirm.

BACKGROUND

I. The Statutory Framework

Congress enacted the Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112–29, 125 Stat. 284, in 2011 to "improve patent quality and limit unnecessary and counterproductive litigation costs[,]" H.R. REP. No. 112-98, pt. I, at 40 (2011). The AIA included changes to the inter partes reexamination provisions. *See* 35 U.S.C. §§ 311–319 (together, the "IPR Statutes"). Specifically, Congress replaced inter partes reexamination with IPR, which "was designed to improve on the inter partes reexamination process." *Regents of the Univ. of Minn. v. LSI Corp.*, 926 F.3d 1327, 1335 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 908 (2020). "Although Congress changed the name from 'reexamination' to 'review,' nothing convinces us that, in doing so, Congress wanted to change its basic purposes, namely to reexamine an earlier agency decision." *Id.* (quoting *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2137 (2016)).

Under the AIA, "a person who is not the owner of a patent may file with the [USPTO] a petition to institute an [IPR] of the patent[,]" 35 U.S.C. § 311(a), but may "request to cancel as unpatentable [one] or more claims of a patent only on a ground that could be raised under [§] 102 or 103[,]" *id.* § 311(b); *see id.* §§ 102(a)(1) (2006) (providing that "[a] person shall be entitled to a patent unless the claimed invention was patented, described in a printed

publication, or in public use, on sale, or otherwise available to the public before [its] effective filing date"), 103 (2006) ("A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.").[1] The USPTO Director may institute an IPR if the petition "shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition." *Id.* § 314(a); *see Oil States Energy Servs. v. Greene's Energy Grp., LLC*, 138 S. Ct 1365, 1371 (2018) ("The decision whether to institute [IPR] is committed to the Director's discretion."). The PTAB "shall . . . conduct each [IPR] instituted[,]" 35 U.S.C. § 316(c), where "the petitioner shall have the burden of proving a proposition of unpatentability by a preponderance of the evidence[,]" *id.* § 316(e).

"During an [IPR] . . . , the patent owner may file [one] motion to amend the patent" by "[c]ancel[ing] any challenged patent claim" and "[f]or each challenged claim, propose a reasonable number of substitute claims." *Id.* § 316(d)(1). The proposed substitute claims "may not enlarge the scope of the claims of the patent or introduce new matter." *Id.* § 316(d)(3). When an IPR is completed, "the [PTAB] shall issue a final written decision with respect to

---

[1]    Congress amended §§ 102 and 103 when it passed the AIA. Pub. L. No. 112-29, § 3(b)(1), § 3(c), 125 Stat. at 285–87. However, because the application that led to the '960 patent never contained a claim having an effective filing date on or after March 16, 2013 (the effective date of the statutory changes enacted in 2011), or a reference under 35 U.S.C. §§ 120, 121, or 365(c) to any patent or application that ever contained such a claim, the pre-AIA § 102 and § 103 apply. *See id.* § 3(n)(1), 125 Stat. at 293.

the patentability of any patent claim challenged by the petitioner and any new claim added under [§] 316(d)." *Id.* § 318(a). Moreover, "the Director shall issue and publish a certificate . . . incorporating in the patent by operation of the certificate any new or amended claim determined to be patentable." *Id.* § 318(b). "Any proposed amended or new claim determined to be patentable and incorporated into a patent following an [IPR]" will "have the same effect as" reissued patents have on certain intervening rights under 35 U.S.C. § 252. *Id.* § 318(c).

## II. The '960 Patent

Entitled "System and Method for Adjustable Licensing of Digital Products," the '960 patent is directed to the "problem . . . that consumers of software . . . use . . . digital products on multiple devices[,]" where consumers have "a legitimate need to install and use the software on every computer." '960 patent col. 1 ll. 31–34, 40–41. The '960 patent teaches the "adjust[ment] [of] the number of devices allowed to use a digital product (e.g., software) under a license." *Id.*, Abstract. To enable the communication involving the adjustable license, the '960 patent discloses computer components, such as a "processor module" and a "memory module." *Id.* col. 7 ll. 46–47; *see id.* col. 7 ll. 36–47.

Independent claim 26, proposed as a substitute to independent claim 1, is illustrative of the Substitute Claims, and recites:

A system for adjusting a license for a digital product over time, the license comprising at least one allowed copy count corresponding to a maximum number of devices authorized for use with the digital product, comprising:

a communication module for receiving a request for authorization to use the digital

product from a given device, the request comprising:

license data associated with the digital product; and

a device identity generated at the given device at least in part by sampling physical parameters of the given device;

a processor module in operative communication with the communication module;

a memory module in operative communication with the processor module and comprising executable code for the processor module to:

verify that the license data associated with the digital product is valid;

in response to the license data being verified as valid, determine whether the device identity is currently on a record;

in response to the device identity already being on the record allow the digital product to be used on the given device;

in response to the device identity not currently being on the record, temporarily adjust the allowed copy count from its current number to a different number by setting the allowed copy count to a first upper limit for a first time period, the first upper limit corresponding to the maximum number of devices

> > authorized to use the digital product during the first time period;
> >
> > calculate a device count corresponding to total number of devices currently authorized for use with the digital product; and
> >
> > when the calculated device count is less than the first upper limit, allow the digital product to be used on the given device.

J.A. 339–40.[2]

### III. Procedural History

Appellees Hulu, LLC and Netflix, Inc. (together, "Hulu") filed a petition with the PTAB to institute an IPR of claims 1–25 of Uniloc's '960 patent. J.A. 89; *see* J.A. 89–164 (Petition for IPR).[3] The PTAB instituted the IPR in August 2017. *Amazon.com, Inc. v. Uniloc Lux. S.A.* ("*Institution Decision*"), No. IPR2017-00948, 2017 WL 3484959 (P.T.A.B. Aug. 14, 2017). On August 1, 2018, the PTAB issued a final written decision finding claims 1–8, 18–22, and 25 unpatentable over the prior art. *See Amazon.com, Inc. v. Uniloc Lux. S.A.* ("*Final Written Decision*"), No.

---

[2]    We include the language proposed to be added and remove the language proposed to be canceled in substitute claim 26.

[3]    Amazon.com, Inc., Amazon Digital Services, Inc., and Amazon Fulfillment Services, Inc. joined Hulu in its Petition for IPR, but withdrew from this appeal. *See* Order at 2, *Uniloc 2017 LLC v. Hulu, LLC*, No. 2019-1686 (Fed. Cir. Apr. 11, 2019), Dkt. 19.

IPR2017-00948, 2018 WL 3695200, at *30 (P.T.A.B. Aug. 1, 2018).[4]

Eight months earlier in the IPR, in January 2018, Uniloc had filed a Motion to Amend, within the PTAB-specified due date, asking the PTAB to enter the Substitute Claims (claims 26–28) for independent claims 1, 22, and 25 if the PTAB found the latter unpatentable. *See id.* at *1; J.A. 310–51 (Motion to Amend); J.A. 313. Hulu opposed the Motion to Amend in February 2018, arguing, among other things, that the Substitute Claims are directed to patent-ineligible subject matter under § 101. J.A. 386; *see* J.A. 381–413 (Opposition to Motion to Amend). Uniloc replied in March 2018 that Hulu was not permitted to raise a § 101 argument in opposition to the Substitute Claims, but did not respond with substantive arguments that its Substitute Claims meet the standards for eligibility under § 101. J.A. 508–09; *see* J.A. 495–512 (Reply to Motion to Amend).

In its *Final Written Decision*, the PTAB, in addition to explaining why the challenged original claims are unpatentable, denied Uniloc's Motion to Amend the claims, concluding that "[Hulu] ha[d] shown by a preponderance of the evidence that [the Substitute Claims] are directed to non-statutory subject matter under 35 U.S.C. § 101." *Final Written Decision*, 2018 WL 3695200, at *30; *id.* at *24–27. Ineligibility was the sole ground on which the PTAB denied the motion to amend. The PTAB rejected Hulu's other objections to the Substitute Claims—obviousness in violation

---

[4]    In a related action, a district court invalidated all claims of the '960 patent under § 101, upon concluding that they were "drawn to [patent-]ineligible subject matter," *Uniloc USA, Inc. v. Amazon.com, Inc.*, 243 F. Supp. 3d 797, 811 (E.D. Tex. 2017), and this court affirmed that judgment on August 9, 2018, after the *Final Written Decision* in the present IPR was issued, 733 F. App'x 1026 (Fed. Cir. 2018).

of § 103, enlargement of claim scope in violation of § 316(d), and indefiniteness in violation of § 112(a).  *Id.* at \*27–30.

Uniloc requested a rehearing on August 31, 2018, J.A. 596–602 (Request for Rehearing), by which time this court had affirmed the federal-court judgment of invalidity of all original claims, *see supra* n.4.  Uniloc argued that "[t]he PTAB misapprehended the law in concluding it is permissible in an IPR proceeding for the [PTAB] to consider a § 101 challenge" to its Substitute Claims.  J.A. 597. As far as we have been shown, Hulu filed nothing at that point contending that the PTAB had lost any authority it had to consider the Substitute Claims given the final federal-court invalidation of the original claims—a contention that would have called for vacatur of the *Final Written Decision* rather than denial of rehearing.  The PTAB denied Uniloc's Request for Rehearing, concluding that § 101 eligibility may be considered by the PTAB in determining proposed substitute claim patentability in IPR proceedings. *See Rehearing Denial*, 2019 WL 343802, at \*5.  The USPTO Director designated the *Rehearing Denial* as precedential. *See id.*

## DISCUSSION

### I. Standard of Review and Legal Standard

"We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citation omitted).  To determine whether the PTAB's interpretation of the statute is in accordance with the law, we review the statute pursuant to the two-step *Chevron* analysis.  *See Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).  When reviewing an agency's construction of a statute, we must first determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  If the answer is yes, then

the inquiry ends, and we "must give effect" to Congress's unambiguous intent. *Id.* at 842–43; *see Sullivan v. Stroop*, 496 U.S. 478, 482 (1990) ("If the statute is clear and unambiguous that is the end of the matter, for the court . . . must give effect to the unambiguously expressed intent of Congress." (internal quotation marks and citation omitted)). We may find Congress has expressed unambiguous intent by examining "the statute's text, structure, and legislative history, and apply[ing] the relevant canons of interpretation." *Heino v. Shinseki*, 683 F.3d 1372, 1378 (Fed. Cir. 2012) (internal quotation marks and citation omitted).

If Congress has not directly spoken to the precise question at issue, we must consider "whether the agency's answer [to the question] is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The agency's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009) (citing *United States v. Mead Corp.*, 533 U.S. 218, 229–30 (2001)).

## II. The Case Is Not Moot

In response to an order of this court directing the parties to address whether the case is moot, Hulu asserts that this court lacks jurisdiction on the ground of mootness. The Director and Uniloc disagree. We reject the mootness contention.

We may dismiss a case for mootness "only if 'it is impossible for [us] to grant any effectual relief whatever' to [Uniloc] assuming it prevails." *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (citing *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). In this case, it is readily possible to grant Uniloc effectual relief if Uniloc is right on the merits. Uniloc's appeal brief argues that the PTAB is statutorily barred from rejecting a Substitute Claim based on § 101. If Uniloc is correct, it is entitled to a certificate adding its Substitute Claims to

the '960 patent, because the PTAB rejected all other grounds for finding unpatentability and Hulu has not challenged the PTAB's rulings in those respects. A judgment providing for addition of the Substitute Claims to Uniloc's patent would be effectual relief.

Hulu argues otherwise by making new arguments about how to read Uniloc's contingent motion to amend and about the USPTO's statutory authority. Specifically, Hulu contends that Uniloc's motion to amend was not actually made "during the IPR" because it was contingent on the PTAB finding the original claims unpatentable—a finding that Hulu treats as ending the IPR. Relatedly, Hulu contends that, once the dispute in the IPR over the original claims was mooted by the final federal-court judgment of invalidity of those claims (which occurred after the *Final Written Decision* but before rehearing was sought), the USPTO lacked statutory authority to consider the proposed substitute claims. On these bases, Hulu suggests that the dispute over the Substitute Claims is moot because the statute precludes Uniloc from securing an addition of those claims to the patent. The Director, like Uniloc, disagrees.

We reject Hulu's arguments. First, under ordinary requirements for preservations of arguments, Hulu has waived these arguments. Before the PTAB, Hulu did not argue that the PTAB could not reach the motion to amend because the motion had to be read as resting on a contingency (finding the specified original claims unpatentable) that would already have ended the IPR. Nor did Hulu argue to the PTAB in response to Uniloc's petition for rehearing—which was filed after the federal-court invalidity judgment became final—that the *Final Written Decision*, or even just the part denying the motion to amend, must be vacated because the dispute over the original claims was moot and the PTAB had lost statutory authority to reach the proposed Substitute Claims. In this court, Hulu likewise made no argument for lack of PTAB statutory authority to reach the Substitute Claims, either by filing a cross-

appeal to secure a vacatur of the PTAB's rulings and dismissal of the IPR or by presenting any such argument in its brief as Appellee, which simply sought affirmance.

A question of an agency's statutory authorization ordinarily is not a nonwaivable "jurisdictional" issue. *See PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1362 (Fed. Cir. 2018); *see also Acoustic Tech., Inc. v. Itron Networked Solutions, Inc.*, 949 F.3d 1360, 1365 (Fed. Cir. 2020); *Jalbert v. SEC*, 945 F.3d 587, 593–94 (1st Cir. 2019). Moreover, in assessing whether there is an Article III case or controversy, a court ordinarily assumes the correctness of the plaintiff's contentions on the merits. *See, e.g., James v. J2 Cloud Servs., LLC*, 887 F.3d 1368, 1372 (Fed. Cir. 2018); *Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325 (Fed. Cir. 2018); *Macy v. GC Servs. Ltd. Pshp.*, 897 F.3d 747, 759 (6th Cir. 2018); *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 954–55 (D.C. Cir. 2016). Here, if Uniloc is right in its argument about the PTAB's statutory authority—that the PTAB has authority to entertain the substitute claims even once the original claims are finally invalidated and that the PTAB lacks authority to consider § 101 before issuing the substitute claims—or if Uniloc has waived its first argument, then the Director (who agrees with Uniloc on that argument and has not addressed waiver) would issue the substitute claims, giving Uniloc concrete relief.

We need not decide if there is some exception to the ordinary application of waiver principles here. In any event, we reject on the merits Hulu's arguments that the PTAB lacked statutory authority to reach the Substitute Claims and the USPTO lacks statutory authority eventually to add those claims to the patent if we were to agree with Uniloc that § 101 eligibility is an impermissible ground for rejecting substitute claims in an IPR. Hulu cites no authority for treating the contingent motion—as the USPTO treated it and as Hulu treated it until responding to this court's directive to address mootness—as anything but a standard

form of in-the-alternative pleading, in which the second alternative, contingent on rejecting the first, is part of the proceeding and may be reached in the same decision as the first. As far as we have been shown, it would be unprecedented, and contrary to the established practice of considering contingent motions to amend, to treat the contingency (finding original claims unpatentable) as ending the IPR so that the proposed substitute claims could no longer be considered. Nothing in 35 U.S.C. § 316(d), or in other provisions of the statute, requires such a dramatic restriction on the availability of amendments in an IPR. Nor does the wording of Uniloc's particular motion to amend—requesting consideration of the Substitute Claims if the PTAB "finds" specified original claims unpatentable, J.A. 313—require such a surprising conclusion.

Similarly, Hulu has pointed to no statutory language that provides a basis for concluding that, once original claims no longer present a live dispute, the PTAB and the USPTO lose authority to consider proposed substitute claims that were presented in a contingent motion timely filed during the IPR when the original claims did present a live dispute. The USPTO treats such a request to consider proposed substitute claims as having an independent continuing presence in the proceeding, not dependent on a live controversy continuing as to the original claims. That treatment is reasonable. Hulu points to no contrary authority. Indeed, the USPTO's treatment is consistent with § 316(d)'s express contemplation that a patent owner may drop original claims and seek to replace them with substitute claims. It is consistent with the Manual of Patent Examining Procedure's description of the operation of ex parte reexamination, which has long allowed consideration of added claims to continue once original claims in reexamination have been held invalid in a final federal-court judgment. MPEP § 2286. Moreover, when Congress replaced the inter partes reexamination provisions with the IPR provisions in the AIA, Congress did not carry forward pre-

AIA § 317(b), concerning the termination of an inter partes reexamination based on parallel judicial proceedings.

In reaching a contrary conclusion, the dissent relies on the word "substitute" in § 316(d), reasoning that there cannot be a substitute claim once the original claims have been finally been held invalid or cancelled. We disagree. The word "substitute" does not entail, as the dissent suggests it does, that the patentee must give what amounts to consideration—something of value—to obtain a replacement claim. Such a requirement is not necessitated by the ordinary meaning of "substitute" or by the use of the word in the IPR context, to which a notion of a bargain or exchange with the USPTO is foreign. The proposed replacement claims are "substitutes" no matter the value or continued existence of the original claims, as a replacement party is a "substitute" upon death of an original party. *See* Fed. R. Civ. P. 25(a); Fed. R. App. P. 43(a).

In short, we see no mootness impediment to our jurisdiction to consider Uniloc's statutory contention about PTAB authority to consider § 101 eligibility for proposed substitute claims. As explained next, we conclude that the PTAB was authorized by statute to assess Uniloc's proposed Substitute Claims for eligibility under § 101 and, finding the claims ineligible, to deny the motion to amend.

### III. The Text, Structure, and Legislative History of the IPR Statutes Confirm that the PTAB May Review Proposed Substitute Claims for Patent Eligibility

The PTAB denied Uniloc's Motion to Amend the '960 patent, concluding that the Substitute Claims were directed to patent-ineligible subject matter under 35 U.S.C. § 101. *See Final Written Decision*, 2018 WL 3695200, at *30. The PTAB concluded that, under the IPR Statutes, it is permitted to review and deny proposed substitute claims during IPR proceedings for patent ineligibility pursuant to § 101. *See Rehearing Denial*, 2019 WL 343802, at *5. Uniloc contends that "[t]he [PTAB] erred as a matter

of law" by basing its denial of the Motion to Amend on its § 101 determination. Appellant's Br. 13. Specifically, Uniloc argues that the PTAB is limited in its review of proposed substitute claims to anticipation or obviousness, as provided by § 311(b). *Id.* at 14. We disagree with Uniloc.

The PTAB correctly concluded that it is not limited by § 311(b) in its review of proposed substitute claims in an IPR, and that it may consider § 101 eligibility. The determination is supported by the text, structure, and history of the IPR Statutes, which indicate Congress's unambiguous intent to permit the PTAB to review proposed substitute claims more broadly than those bases provided in § 311(b). *See Chevron*, 467 U.S. at 842. First, the text of the IPR Statutes supports the conclusion that the PTAB may consider § 101 eligibility when reviewing substitute claims. The IPR Statutes plainly and repeatedly require the PTAB to determine the "patentability" of proposed substitute claims. Section 318 requires the PTAB "issue a final written decision with respect to the *patentability* of . . . any new claim added under [§] 316(d)." 35 U.S.C. § 318(a) (emphasis added). It further provides that "the Director shall issue and publish a certificate . . . incorporating in the patent by operation of the certificate any new or amended claim determined to be *patentable*." *Id.* § 318(b) (emphasis added). Moreover, it states that "[a]ny proposed amended or new *claim determined to be patentable* and incorporated into a patent following an [IPR]" will "have the same effect as" if it had been originally granted. *Id.* § 318(c) (emphasis added) (incorporating by reference 35 U.S.C. § 252). As we have concluded, a § 101 analysis constitutes a "patentability" determination. *See Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1329–31 (Fed. Cir. 2015) (explaining that the use of the phrase "conditions of patentability" in the AIA extends to § 101 challenges); *see also id.* at 1330 ("[B]oth our opinions and the Supreme Court's opinions over the years have established that § 101 challenges [are] . . . patentability challenges."); *Aristocrat Techs.*

*Austl. Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661 (Fed. Cir. 2008) ("It has long been understood that the Patent Act sets out the conditions for patentability in three sections: [§§] 101, 102, and 103." (citing *Graham v. John Deere*, 383 U.S. 1, 12 (1966))). The plain language of the IPR Statutes demonstrates Congress's intent for the PTAB to review proposed substitute claims for overall "patentability"—including under § 101—of the claims.

Despite Uniloc's claim to the contrary, *see* Appellant's Br. 14, Congress did not intend § 311 to constrain the PTAB's review of proposed substitute claims to anticipation and obviousness, pursuant to § 102 and § 103, respectively, excluding other invalidity issues, such as those that might arise under § 101. Section 311 is confined to the review of existing patent claims, not proposed ones: it limits "[a] request *to cancel* as unpatentable [one] or more *claims of a patent*" to a "ground that could be raised under [§] 102 or [§] 103[.]" 35 U.S.C. § 311(b) (emphases added). The plain language of the statute limits the provision to the IPR petitioner's "request to cancel" a claim that is "of a patent," but it does not so limit the PTAB's evaluation of proposed substitute claims. *Id.* To "cancel" carries the ordinary meaning to "annul or destroy[,]" *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co.*, 559 U.S. 175, 183 (2010) (internal quotation marks and citation omitted); *see* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1961) (providing the definition of "cancel" as the "destr[uction] [of] the force, effectiveness, or validity"), which presupposes that which is being "cancelled" is already in effect. In § 311(b), the infinitive "to cancel" is followed by its direct object, the phrase "[one] or more claims[.]" 35 U.S.C. § 311(b); *see id.* ("A petitioner in an [IPR] may request to cancel . . . [one] or more claims[.]"). When given its ordinary meaning, § 311(b) provides that only claims that are in effect may be annulled. In an IPR, only the preexisting claims of the at-issue patent are in effect, as an IPR petition may only be brought of an already issued patent. *See id.* § 311(a) ("[A] person who is

not the owner of a patent may file with the [USPTO] a petition to institute an [IPR] of the patent."). In the case of a substitute claim, there is no such prior "force, effectiveness, or validity," as the substitute claim has never been approved or issued by the USPTO. *See id.* § 318(a), (b). Relatedly, a substitute claim is not part "of the patent," as it has not been previously approved and issued by the USPTO, as § 318 itself expresses that a substitute claim shall be "incorporat[ed] in the patent" only after it is "determined to be patentable." 35 U.S.C. § 318(b). Therefore, a substitute claim that has not been issued cannot be "cancel[ed]," and so is not "of the patent" when proposed by the patent owner. *Id.* Accordingly, the limits of § 311(b) do not extend to the PTAB's review of proposed substitute claims.

Second, the structure and legislative history of the IPR Statutes support this conclusion. Regarding structure, the IPR Statutes proceed in chronological order from the IPR petition, to institution, and adjudication: §§ 311–313 provide the rules for filing a petition, § 314 and § 315 address criteria for institution, § 316 guides trial conduct, and §§ 317–319 relate to settlements, final written decisions, and appeals. Section 311, as a provision applying to the petition phase of the proceedings, should not therefore bind a separate adjudication-stage provision, such as § 316.

The IPR Statutes' legislative history also confirms that the PTAB is permitted to review proposed substitute claims for patentability outside of anticipation and obviousness. "Reexamination proceedings . . . are intended to 'permit any party to petition the [US]PTO to review the efficacy of a patent, following its issuance, on the basis of new information about preexisting technology that may have escaped review at the time of the initial examination.'" *In re NTP, Inc.*, 654 F.3d 1268, 1275 (Fed. Cir. 2011) (alteration omitted) (quoting H.R. REP. No. 66-1307, 96th Cong., 2d Sess. (1980), at 3–4). As we explained in *NTP*, "[t]he scope of reexamination proceedings is limited to 'substantial new question[s] of patentability,' 35 U.S.C.

§ 303(a) [(2006)], which are questions that have not previously been considered by the [US]PTO," *NTP*, 654 F.3d at 1275 (citation omitted). While we noted that the request for reexamination under § 302 may be based only on prior art citations and the patent owner's written statements, *id.* (citing 35 U.S.C. §§ 301, 302), we cabined the scope of these limitations to the patent's "original claims," stating that "other challenges to the *patentability of original claims*— such as qualification as patentable subject matter under § 101 . . . —may not be raised in reexamination proceedings[,]" *id.* at 1275–76 (citing 35 U.S.C. §§ 301, 302) (emphasis added). Moreover, we concluded that "[t]here is no statutory limitation during a reexamination proceeding prohibiting the examiner from conducting a priority analysis[,]" under 35 U.S.C. § 120, as a prohibition on such analysis would "strip[] [the examiner] of a critical legal tool needed in performing a proper reexamination." *Id.* at 1277. As we explained in *NTP*, it was Congress's intent to permit the PTAB to address issues that "have escaped review at the time of the initial examination." *Id.* at 1275 (quoting H.R. REP. No. 66-1307, 96th Cong., 2d Sess. (1980), at 3–4).

Proposed substitute claims in an IPR proceeding have not undergone a patentability review by the USPTO, *see* 35 U.S.C. § 316, and so the "substantial new questions of patentability" that "have not previously been considered by the [US]PTO" include all patentability questions, including § 101 patent eligibility, *NTP*, 654 F.3d at 1275 (internal quotation marks, alteration, and citations omitted). Prohibiting the PTAB from reviewing patent eligibility would indeed "strip[] [the PTAB] of a critical legal tool[.]" *Id.* at 1277. While *NTP* addressed pre-AIA reexamination proceedings, its reasoning is applicable here, as the underlying motivation for an IPR proceeding did not change with the AIA. *Regents*, 926 F.3d at 1335 (explaining that "[a]lthough Congress changed the name from 'reexamination' to 'review,'" the "basic purposes" of "reexamin[ing] an earlier agency decision" remained); *see* H.R. REP. 112-98,

pt. I, at 46–47 (2011) (explaining that the AIA's alterations to the inter partes reexamination includes an "expan[sion] [of] the category of documents that may be cited" to, a "conver[sion] [of the] inter partes reexamination from an examinational to an adjudicative proceeding," and a number of "improvements to th[e] proceeding"); USPTO REPORT TO CONGRESS ON INTER PARTES REEXAMINATION (2004), at 1 (recommending three areas of improvement to the inter partes reexamination process by: clarifying estoppel provisions, providing petitioners with additional opportunities to provide input, and extending statutory deadlines). Moreover, § 311 is premised on the pre-AIA reexamination statute, providing analogous language and a comparable procedural position to the pre-AIA reexamination statute. *Compare* 35 U.S.C. § 311 (2012) (providing that a petitioner "may file with the [USPTO] a petition to institute an [IPR] of the patent[,]" "request[ing] to cancel as unpatentable [one] or more claims of a patent only on a ground that could be raised under [§] 102 or [§] 103 and only on the basis of prior art consisting of patents or printed publications"), *with* 35 U.S.C. § 302 (2006) ("Any person at any time may file a request for reexamination by the [USPTO] of any claim of a patent on the basis of any prior art cited under the provisions of [§] 301[.]"); *see id.* § 301 (2006) (providing prior art as "consisting of patents or printed publications which [the petitioner] believes to have a bearing on the patentability of any claim of a particular patent").

As the USPTO explains, "if a patent owner seeking amendments in an IPR were not bound by § 101 and § 112, then in virtually any case, it could overcome prior art and obtain new claims simply by going outside the boundaries of patent eligibility and the invention described in the specification[,]" Intervenor Br. 25, allowing patents with otherwise invalidated claims "to return from the dead as IPR amendments[,]" *id.* at 26. Because the proposed substitute claims have not been assessed for patentability by the USPTO, the PTAB achieves the purpose set forth by

Congress to review "substantial new questions of patentability" based on claims "that have not previously been considered by the [US]PTO." *NTP*, 654 F.3d at 1275 (internal quotation marks, alteration, and citations omitted). Indeed, Uniloc has not identified any other context under Title 35—e.g., original applications, reexaminations, reissue, etc.—in which the USPTO is required or authorized to newly issue a patent claim without ever having determined that the particular claim meets the statutory requirements for patentability. The result suggested by Uniloc—that the USPTO must issue the Substitute Claims without considering § 101, and leave consideration of eligibility to post-issuance challenges—would therefore be grossly out of keeping with the statutory regime as a whole. The PTAB correctly concluded that it may consider § 101 patent eligibility when considering the patentability of proposed substitute claims in an IPR.[5]

Uniloc contends that our decision in *Aqua Products Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) (en banc), forecloses the review of its Substitute Claims under § 101, *see* Appellant's Br. 19–21. Specifically, Uniloc, in quoting the *Aqua Products* plurality, argues that because "[t]he structure of an IPR does not allow the patent owner to inject a wholly new proposition of unpatentability into the IPR by proposing an amended claim[,]" and as a substitute claim must be narrower than the claim it replaces, "[w]hen the

---

[5]    As the text, structure, and history of the IPR Statutes are unambiguous, we need not reach the issue of deference to the USPTO's interpretation of the statute set forth in its precedential decision. *See Nan Ya Plastics Corp.*, 810 F.3d at 1341 ("If Congress's intent is clear, 'that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" (quoting *Chevron*, 467 U.S. at 842–43)); *see also Rehearing Denial*, 2019 WL 343802, at *5.

petitioner disputes whether a proposed amended claim is patentable, it simply continues to advance a 'proposition of unpatentability' in an '[IPR] instituted under this chapter.'" *Id.* at 19 (quoting *Aqua Prods.*, 872 F.3d at 1306 (quoting 35 U.S.C. § 316(e))). No opinion in *Aqua Products* garnered a majority, leaving the only holding as a burden of proof determination, concluding that the USPTO had improperly adopted regulations assigning the burden of proof with respect to proposed substitute claims. 872 F.3d at 1327–28. The *Aqua Products* language Uniloc relies upon addresses only whether a petitioner challenging the proposed substitute claims bears § 316(e)'s burden of proof. Appellant's Br. 19–21; *see Aqua Prods.*, 872 F.3d at 1306 (addressing whether the language of § 316(e), which all conceded applied to challenged claims, "applies equally to proposed substitute claims"). *Aqua Products* is silent as to whether a petition may raise a patent-ineligibility challenge to a proposed substitute claim. Accordingly, *Aqua Products* does not foreclose the PTAB's § 101 review of Uniloc's Substitute Claims and subsequent denial of Uniloc's Motion to Amend.

## CONCLUSION

We have considered Uniloc's remaining arguments—including its argument that it should be given a second chance to address § 101 on the merits in the USPTO, having bypassed the full opportunity it already had—and find them unpersuasive. Accordingly, the Rehearing Denial of the U.S. Patent Trial and Appeal Board is

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**UNILOC 2017 LLC,**
*Appellant*

**v.**

**HULU, LLC, NETFLIX, INC.,**
*Appellees*

**ANDREI IANCU, UNDER SECRETARY OF
COMMERCE FOR INTELLECTUAL PROPERTY
AND DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2019-1686

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2017-00948.

---

O'MALLEY, *Circuit Judge*, dissenting.

Typically, when this court has finally adjudged a patent claim invalid, it also refuses to consider any appeal that demands relief dependent on that claim and vacates any such relief that has been awarded by another tribunal. *See e.g.*, *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1361 (Fed. Cir. 2015); *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1347 (Fed. Cir. 2013); *see also Chrimar*

*Sys., Inc. v. ALE USA Inc.*, 785 F. App'x 854, 856 (Fed. Cir. 2019*), cert. denied*, No. 19-1124, 2020 WL 3492668 (U.S. June 29, 2020). Here, rather than follow that usual procedure, the majority breathes life into a dead patent and uses the zombie it has created as a means to dramatically expand the scope of inter partes review ("IPR") proceedings. Because the Patent Trial and Appeal Board ("Board") is estopped from issuing substitute claims in place of the invalidated claims of U.S. Patent No. 8,566,960 ("'960 patent") and because, even if the Board could issue such claims, it would be improper for it to consider 35 U.S.C. § 101, I respectfully dissent.

I

In 2016, Uniloc[1] filed several lawsuits in the Eastern District of Texas, alleging that Hulu, LLC and Netflix, Inc. ("petitioners"), among others, infringed the claims of the '960 patent. *See Uniloc USA, Inc. v. Amazon.com, Inc.*, 243 F. Supp. 3d 797 (E.D. Tex. 2017). In March 2017, the district court dismissed the cases for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), holding all claims of the '960 patent ineligible for patenting under § 101. *Id.* at 811. Uniloc appealed, and, on August 9, 2018, we summarily affirmed the district court's decision. *See Uniloc USA, Inc. v. Amazon.com, Inc.*, 733 F. App'x 1026 (Fed. Cir. 2018). Uniloc did not seek Supreme Court review.

---

[1] The "Uniloc" entities that filed suit in district court are named Uniloc USA, Inc. and Uniloc Luxembourg S.A. Appellant in this case is Uniloc 2017 LLC. The technical separateness of those entities' corporate identities is not relevant to this appeal; there is no dispute that the real parties in interest are the same in both proceedings. I thus refer to all as "Uniloc" throughout.

Prior to the district court's dismissal of Uniloc's infringement actions, petitioners filed a petition for IPR with the Board, challenging all claims of the '960 patent as anticipated or obvious over the prior art. The Board instituted on all claims and grounds. Uniloc filed a patent owner response and a contingent motion to amend the independent claims. The Board issued a final written decision ("FWD") on August 1, 2018. It held that petitioners had proven the unpatentability of original claims 1–8, 18–22, and 25, but had not proven the unpatentability of original claims 9–17, 23, and 24. The Board further denied Uniloc's motion to amend, holding that those claims, while not otherwise unpatentable over the prior art and otherwise satisfying the statutory and regulatory prerequisites to amendment, were patent ineligible.

In its FWD, the Board stated that it had previously addressed § 101 grounds in the IPR context, citing *Western Digital Corp. v. Spex Technologies, Inc.*, 2018 WL 1989599, at *2–3 (P.T.A.B. Apr. 25, 2018); *Ariosa Diagnostics v. Isis Innovation Ltd.*, 2014 WL 4381564, at *31–32 (P.T.A.B. Sept. 2, 2014). J.A. 58–59. It then said that, in its view, it made sense to do so when evaluating proposed substitute claims, in addition to addressing the §§ 102 and 103 grounds raised in the petition.[2]

---

[2]    The Board's reference to *Western Digital* and *Ariosa* is curious. In *Western Digital*, the Board addressed whether a narrowing amendment that coincidentally appears to correct a potential § 101 problem in a challenged claim (for example, a problem identified in a parallel district court proceeding) would be improper. *W. Dig. Corp.*, 2018 WL 1989599, at *2–3. The Board simply held that, where the amendment satisfies the statutory and regulatory criteria for amendments in an IPR, the mere fact that it might also help avoid a separate § 101 challenge is not disqualifying. *Id.* It said nothing about whether a

4                                          UNILOC 2017 LLC v. HULU, LLC

Uniloc requested rehearing as to only the proposed amended claims, which the Board denied on January 18, 2019.  In its denial, the Board engaged directly with the statutory language.  It focused first on the language of 35 U.S.C. § 311(b):

> A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications.

The Board explained that § 311(b) governs the petition, not the petitioner's response to a patent owner's motion to amend.  Section 316(d), the statutory provision allowing for amendment, it reasoned, is not limited to §§ 102 and 103. In the Board's view, the distinction between the grounds for challenging original claims and substitute claims is further reinforced by the treatment of the claims in § 318.  J.A.

---

petitioner or the Board itself could raise a § 101 challenge to an otherwise compliant amendment.

The citation to *Ariosa* fares no better.  There, the Board's entire discussion was premised on the conclusion that the patent owner had the obligation to prove patentability of its amendment—answering any questions about its propriety in that context, including § 101 questions posed in a district court proceeding.  *See Ariosa Diagnostics*, 2014 WL 4381564, at *31–32.  But, *Ariosa* predates *Aqua Products v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017), where we made clear that the burden to prove patentability of a proposed amendment could not be placed on the patent owner precisely because the petitioner had the burden of establishing invalidity under the grounds asserted in the petition, which are limited by statute to challenges under §§ 102 and 103.

Notably, the majority does not cite either to support its conclusion.

77 ("Section 318(b) . . . reiterates this distinction, providing that, if we issue a final written decision, 'the Director shall issue and publish a certificate canceling *any claim of the patent finally determined to be unpatentable*, confirming *any claim of the patent determined to be patentable*, and incorporating in the patent by operation of the certificate *any new or amended claim* determined to be patentable.'") (emphases in original).

The Board further reasoned that its ability to consider § 101 is consistent with its practice of considering § 112 when deciding proposed amended claims. The Board thus concluded that nothing precludes it from evaluating substitute claims through the §101 lens and declined rehearing. The Board's denial of Uniloc's request for rehearing was designated as precedential.

Uniloc appeals.

## II

As an initial matter, contrary to the conclusion reached by the majority, this case is moot. "[A]n appeal should . . . be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever in favor of the appellant." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (quotation marks omitted). The majority asserts that, in the event Uniloc is successful on the merits, there is some possibility of relief. Maj. 11. My colleagues are mistaken.

In this case, relief is possible only if, in the event of a remand, the Board has authority to issue *substitute* claims. *See* 35 U.S.C. § 316(d)(1)(B) (allowing a patentee to "propose a reasonable number of substitute claims"); § 318(a)–(b) (governing the incorporation of claims added via the operation of § 316(d)); 37 C.F.R. § 42.121(a)(3) ("The presumption is that only one substitute claim would be needed to *replace* each challenged claim . . . ." (emphasis added)) . Completing such a substitution requires that there be

original claims to *substitute* out for the new claims—i.e., in the words of the Patent Office itself, the patentee must "replace" a challenged claim with a substitute.[3]  *See S*ubstitute, *Oxford English Dictionary* (3d ed., 2012 update) ("An object, practice, action, etc., which takes the place of another; a replacement"); Substitution, *Oxford English Dictionary* (3d ed., 2012 update) ("The action or an act of putting one person or thing in place of another; the fact of being put in another's place.").  In the context of an IPR, this means that, in exchange for a substitute claim, a patent owner must be capable of relinquishing a patent right.  This is a necessary part of the statutory scheme, moreover, as it ensures that the claims issued from IPR, having not

---

[3]    The majority contends that its understanding of the statutory scheme on this point is consistent with the United States Patent Office's treatment of similarly situated claims in inter partes reexamination proceedings.  Maj. 13 (citing MPEP § 2286).  Inter partes reexamination proceedings are, however, governed by entirely different statutory language than the language relevant here.  In an inter partes reexamination, "the patent owner shall be permitted to propose any amendment to the patent and a new claim or claims, except that no proposed amended or new claim enlarging the scope of the claims of the patent shall be permitted."  35 U.S.C. § 314(a) (pre-AIA).  In the IPR context the Board is not merely considering "new" claims, it is considering proposed "*substitute*" claims." § 316(d)(1)(B).  A substitute is of an entirely different character than something new.  The Board itself has said that, for this reason, "[a]n inter partes review is neither a patent examination proceeding nor a patent reexamination proceeding." *Ariosa Diagnostics*, 2014 WL 4381564, at *30.  And, that "proposed substitute claims will be added directly to the patent, without examination, if the patent owner's motion to amend is granted." *Id.* (emphasis omitted).

UNILOC 2017 LLC v. HULU, LLC                                7

themselves undergone a separate examination, share a direct lineage from claims that were not otherwise invalidated on non-102 and 103 grounds.

After our affirmance of the district court's ineligibility determination, and once the time expired for Uniloc to seek Supreme Court review of that affirmance, it did not possess any patent rights that it could give up in exchange for a substitute claim. It owned nothing and could not, therefore, substitute its old claims for new ones.[4] If Uniloc were to prevail in this appeal and return to the Board, the Board would be without power to effectuate a substitution. The finality of our invalidity judgment should therefore be the end of the inquiry in this case. *See Fresenius*, 721 F.3d at 1344 (explaining that, based on the structure of the statutes governing IPRs, a final judgment of invalidity in one proceeding forecloses relief based on a patent claim in a parallel proceeding).

Despite a final judgment of invalidity of all original claims of the '960 patent, the majority declares, without explanation, that the Board could grant Uniloc the relief it requests and proceeds to focus its entire analysis on the contingent nature of Uniloc's motion to amend. Maj. 10–14. Although I agree with the majority that the contingent nature of the motion to amend is unimportant, I do not agree with the majority that Appellees somehow waived any argument that this matter is moot by not raising this

---

[4]    To analogize to ownership of real property, if a court finally determines that a deed to property is defective such that the property belongs to someone else, the former "owner" cannot "substitute" that property for a new parcel—even if the owner is in the middle of closing a sale. The former "owner" has nothing to give up and, indeed, never had anything to bargain with in the first place.

issue prior to our invitation to address it.[5]  Because moot-
ness implicates Article III's case or controversy require-
ment—a threshold jurisdictional issue—a party cannot
waive it.  *See  Genesis Healthcare Corp. v. Symczyk*, 569
U.S. 66, 71–72 (2013); *Iron Arrow Honor Soc'y v. Heckler*,
464 U.S. 67, 70 (1983).  It is, moreover, well established
that threshold jurisdictional questions can be raised at any
time.  *Schering Corp. v. United States*, 626 F.2d 162, 167
(C.C.P.A. 1980).  And we have a duty to independently

---

[5]    The majority contends, "[a] question of an agency's
statutory authorization ordinarily is not a nonwaivable 'ju-
risdictional' issue."  Maj. 11.  The issue of our jurisdiction
is distinct from a challenge to the agency's authority.
While, for example, a party may waive an argument that
an agency did not have authority to institute on only some
grounds raised in a petition, *see PGS Geophysical AS v.
Iancu*, 891 F.3d 1354, 1361–62 (Fed. Cir. 2018), or an argu-
ment that a petition was untimely filed, *see Acoustic Tech.,
Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1360, 1365
(Fed. Cir. 2020), it cannot waive an argument that *we* lack
jurisdiction based on mootness resulting from a proper un-
derstanding of what relief, if any, the Board could provide
in the event of a remand.

The majority further asserts, "in assessing whether
there is an Article III case or controversy, a court ordinarily
assumes the correctness of the plaintiff's contentions on the
merits."  Maj. 12.  Three of the cases cited by the majority
address standing, not mootness.  *See James v. J2 Cloud
Servs., LLC*, 887 F.3d 1368, 1372 (Fed. Cir. 2018); *Rocky
Mountain Helium, LLC v. United States*, 841 F.3d 1320,
1325 (Fed. Cir. 2018); *Macy v. GC Servs. Ltd*, 897 F.3d 747,
759 (6th Cir. 2018).  None stand for the proposition that we
must assume that a plaintiff is correct in its interpretation
of a statute.  *See, e.g., Judicial Watch, Inc. v. Kerry*, 844
F.3d 952, 954–55 (D.C. Cir. 2016) (discussing factual alle-
gations).

inquire into our jurisdiction, even absent a party raising the issue. *Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 273 (Fed. Cir. 1985). The majority's focus on Appellees' failure to raise their mootness arguments earlier is, therefore, misplaced.

The majority further places a great deal of weight on whether the Board has authority to issue substitute claims in an ongoing IPR after it holds the original claims invalid. This misses the point. The issue before us is not the extent to which the Board can consider a contingent motion to amend, in an *ongoing, non-final* IPR. Rather, the question we must answer is whether the Board can consider a request to substitute claims where, in a parallel proceeding with a final judgment, the original claims have been held invalid. As I explain above, the final judgment forecloses consideration of the merits of this appeal and should be given proper effect.[6]

---

[6]　It is also worth noting that the majority's determination that this IPR can continue, after a final judgment of invalidity in the district court case, is inconsistent with recent policy statements adopted by the Board. In a precedential opinion, the Board announced six factors to consider when deciding whether it should exercise its discretion to institute an IPR when a parallel district court case is ongoing:

　　1. whether the court granted a stay or evidence exists that one may be granted if a proceeding is instituted;

　　2. proximity of the court's trial date to the Board's projected statutory deadline for a final written decision;

　　3. investment in the parallel proceeding by the court and the parties;

10                          UNILOC 2017 LLC v. HULU, LLC

## III

After concluding that an invalid patent can serve as a vehicle to reach the merits of this appeal, the majority announces that, when it comes to substitute claims, the Board can engage in a full-blown examination. This revelation runs contrary to the plain language of the statute and the policy of efficiency that underlies the IPR system.

## A

The America Invents Act ("AIA") IPR provisions establish a clear and intuitive structure for efficiently processing claims challenged by a petitioner. 35 U.S.C. §§ 311–319. Section 311(b) establishes the "scope" of inter partes review. A petitioner "may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." § 311(b).

---

4. overlap between issues raised in the petition and in the parallel proceeding;

5. whether the petitioner and the defendant in the parallel proceeding are the same party; and

6. other circumstances that impact the Board's exercise of discretion, including the merits.

*Apple Inc., v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495, at *2 (P.T.A.B. Mar. 20, 2020). These discretionary factors strongly indicate that the Board views parallel district court cases as highly relevant to the continued relevance of an IPR proceeding. Where, as here, the district court proceeding has eliminated all the claims subject to the IPR, the Board's own policy supports declaring that IPR over.

After institution, § 316, titled "Conduct of Inter Partes Review," controls the proceeding and includes a subsection that allows a patentee to amend its patent by either (1) canceling any challenged claim or (2) proposing a reasonable number of substitute claims for any challenged claim. § 316(d)(1). The substitute claims "may not enlarge the scope of the claims of the patent or introduce new matter." § 316(d)(3). The governing regulations, implementing the limitations set out in § 316(d)(3), provide that the Board may deny a motion to amend if the amendment does not satisfy the statutory requirements—i.e., if it expands the claim scope, introduces new matter, or if it "does not respond to a ground of unpatentability involved in the trial." 37 C.F.R. § 42.121(a)(2); *see also Aqua Prod., Inc. v. Matal*, 872 F.3d 1290, 1301 (Fed. Cir. 2017).

Governing the end of IPR proceedings, § 318 is titled "Decision of the Board." It provides, "[i]f an inter partes review is instituted and not dismissed under this chapter, the [Board] shall issue a final written decision with respect to the *patentability* of any patent claim challenged by the petitioner and any new claim added under section 316(d)." § 318(a) (emphasis added). It also requires the Director to issue a certificate in accordance with the decision, once the decision is final. § 318(b).

The majority focuses narrowly on the literal text of the three provisions discussed above and fails entirely to contend with the clear framework of the IPR provisions. Plain language interpretation requires more than cherry picking provisions out of context. We "must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, 135 S. Ct. 2480, 2483, 192 L. Ed. 2d 483 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

The majority starts with the text of § 318 and so will I. The majority contends that the term "patentability" should be understood as having two distinct meanings in the

context of § 318.  Maj. 14–16.  That is, the majority takes
the position that "patentability," which appears only once
in the relevant provision, means one thing as to "any pa-
tent claim challenged by the petitioner" and something en-
tirely different as to "any new claim added under section
316(d)."  *See* § 318(b).  Understanding a single word to con-
vey two different meanings in a statute is inconsistent with
basic principles of statutory interpretation.  *Cf. Credit Ac-
ceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1053
(Fed. Cir. 2017) ("The normal rule of statutory interpreta-
tion is that identical words used in different parts of the
same statute are generally presumed to have the same
meaning." (brackets omitted) (quoting *IBP, Inc. v. Alvarez*,
546 U.S. 21, 22 (2005))).  Thus, although outside the spe-
cific context of this statutory scheme we have stated that
§ 101 is a patentability provision, *see Aristocrat Techs.
Austl. Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661 (Fed.
Cir. 2008), that fact cannot control here.  Instead, we must
discern an appropriate, *single* meaning for a term that is
used only *once* in § 318(a).  The sole meaning of patentabil-
ity must be, therefore, the one contemplated by § 311(b).
Even the majority agrees that, as to challenged claims, "pa-
tentability" means patentability over §§ 102 and 103
grounds based on limited categories of prior art.  Absent
some clear intent to give a single word two highly different
meanings, we must give "patentability" one meaning in
this statute.  The meaning that undisputedly applies to
challenged claims is the one we must apply universally.[7]

---

[7]    I recognize that § 318(b) further provides "the Di-
rector shall issue and publish a certificate . . . incorporating
in the patent by operation of the certificate any new or
amended claim *determined to be patentable*."  35 U.S.C.
§ 318(b) (emphasis added).  This additional language, how-
ever, is clearly in reference to § 318(a), cannot be read as
expanding the scope of the Board's review, and is identical

UNILOC 2017 LLC v. HULU, LLC                                    13

The majority, notably citing no legislative history, next declares, "Congress did not intend § 311 to constrain the [Board's] review of proposed substitute claims to anticipation and obviousness . . . ." Maj. 16. In support of this conclusion, my colleagues parse the language of § 311(b)—explaining that the provision only applies to those claims which may be canceled. *Id.* at 16–17. This discussion is beside the point and says nothing about Congress's intent as to the scope of patentability issues that may be considered in an IPR. It is true that a petitioner may only challenge and seek to cancel issued claims in a petition—unless the petitioner is clairvoyant it could not possibly do more. That undisputed truth does not, however, speak to whether Congress intended the limitations on "scope" found in § 311(b) to apply to substitute claims.

Looking at the statutory framework as a whole, "[t]he structure of an IPR does not allow the patent owner to inject a wholly new proposition of unpatentability into the IPR by proposing an amended claim." *Aqua Prod., Inc.*, 872 F.3d 1290, 1306 (Fed. Cir. 2017). The patent owner may only propose narrowed claims that address the issues raised in the petition. *See* 37 C.F.R. § 42.121(a)(2). Contrary to the conclusion the majority reaches by cabining the IPR "scope" provision, the overall structure indicates that Congress intended to limit the Board's authority to a review of the specified patentability grounds. To the extent the "chronological" nature of the IPR Statutes bears on this question, § 311 comes first, setting the parameters of what may be considered throughout the proceeding. Substitute claims come into existence only after the scope of the IPR has been set. It follows that Congress did not need to rearticulate a parameter already expressed in prior provisions: IPRs are limited to §§ 102 or 103 and to prior art

_____

to the language the provision uses when addressing challenged claims.

consisting of patents or printed publications. And, as discussed above, the fact that Congress failed to describe separate standards for evaluating challenged claims and substitute claims conclusively supports such an understanding

Still reaching for history (legislative or otherwise) to support its position, the majority moves to the history of pre-AIA reexamination proceedings. Maj. 17–18. Much like the majority's consideration of claims that can be canceled in an IPR, the majority's discussion of reexamination is irrelevant to the question of whether § 101 is properly considered in the context of an IPR. Reexamination, as is clear from its name, is by its very nature an *examination* with a different scope than IPRs. *See* discussion *supra* note 3.

To justify its rationale, the majority looks to *In re NTP, Inc.*, 654 F.3d 1268 (Fed. Cir. 2011), for support; they find very little. In *NTP*, we held, consistent with the reexamination statutes, that § 101 was not an appropriate patentability challenge to raise in reexamination and reached the innocuous conclusion that "[t]here is no statutory limitation during a reexamination proceeding prohibiting the examiner from conducting a [§ 120] priority analysis." *Id.* at 1275–77. But § 120 is *not* a patentability provision (which appear in Chapter 10 of Title 35, entitled "Patentability of Inventions"). Rather, § 120 is a procedural provision falling under Chapter 11 of Title 35, "Application for Patent." Our statement in *NTP* that the Board had access to a necessary *tool* for considering a patent's priority is thus not the least bit relevant to the scope of the Board's *substantive* authority for examining patentability. *See id.* at 77. What *is* relevant is the language of the statute actually at issue in this case, which clearly prohibits consideration of patentability challenges other than §§ 102 and 103.

Still focusing on *NTP*, the majority transforms that clear holding into a supposed articulation of a general

policy inviting resort to all examination requirements wherever there may be "substantial new questions of patentability." Maj. 18–19. But, in *NTP* we explained, without qualification, that:

> The scope of reexamination proceedings is limited to "substantial new question[s] of patentability," 35 U.S.C. § 303(a), which are questions that have not previously been considered by the PTO, *Swanson,* 540 F.3d at 1379. These new considerations must be based only on "prior art consisting of patents or printed publications." 35 U.S.C. § 301; *see id.* § 302. Thus, other challenges to the patentability of original claims—*such as qualification as patentable subject matter under § 101* or satisfaction of the written description and enablement requirements of § 112—may not be raised in reexamination proceedings.

*In re NTP, Inc.*, 654 F.3d at 1275–76 (emphasis added). Oddly, the majority views this language as somehow supporting its conclusion that proposed substitute claims must be subject to a full examination in the IPR context. I disagree. *NTP* actually supports the opposite conclusion, by reference to the specific reexamination statute at issue and the limitations articulated therein. That is precisely what we must do here. Even if *NTP* meant to create an exception to the § 101 exclusion it called out, moreover, and intended to apply it to the as yet unenacted AIA, amending a claim in response to prior art raised in a petition, in the manner contemplated by the IPR statutes, does not somehow inject a new question of patentability as to the claim—substantial, or otherwise. If the challenged patent claims were invalid under § 101 prior to amendment, amending them to be narrower is not going to create a "new" question of patentability. At worst, the claims would be invalid just as

they were before.  At best, the patentee may have resolved the § 101 issue by amendment.[8]

Concerns about 35 U.S.C. § 112 fill out much of the remainder of the majority's opinion.  *See* Maj. 19–20.  These concerns are also misguided and misplaced.  Section 316(d)(3) mandates that substitute claims not add new matter or enlarge the scope of the  claims.  35 U.S.C. § 316(d)(3) ("An amendment under this subsection may not enlarge the scope of the claims of the patent or introduce new matter.").  In order to ensure compliance with the statute, the Board must necessarily discern the scope of the claims and evaluate whether the matter claimed is in the specification.  This process may look a great deal like the inquiry required by § 112 and, indeed, the Board may choose to use our indefiniteness and written description case law as a guide.  That does not, however, transform the Board's process of deciding whether the claims comply with the statute into a patentability analysis under § 112.  Section 112 is not, moreover, a patentability provision.  Like § 120, it appears in Chapter 11 of Title 35, "Application for

---

[8]    The parties quibble about whether a narrower or more detailed claim could somehow move from patent eligible to patent ineligible under our § 101 case law.  *See* Appellee's Br. 28–29 (stating, without example, that such a result is possible); Intervenor's Br. 26–27 (theorizing a claim where the added point of novelty in a substitute claim, beyond the limitations in the issued claims, is a fundamental business practice); Appellant's Reply Br. 6–7 (noting that the Director's hypothetical is farfetched and contingent on the Board first finding the challenged claims invalid).  The mental gymnastics necessary to imagine the situations described by the Director and Appellees are sufficient for me to conclude that this is not a legitimate concern.  And it is certainly not one that could not be addressed in District Court.

Patent."  Thus, as applied to substitute claims, § 112 may properly be viewed as a "tool" the Board can use in deciding whether the claims comply with the statute.  *See In re NTP, Inc.*, 654 F.3d at 1277.

Finally, the majority attempts to diminish the significance of the *Aqua Products* plurality opinion by implying that its discussion of the overall IPR statutory scheme was directed only to "whether a petitioner challenging the proposed substitute claims bears § 316(e)'s burden of proof." Maj. 20–21.  I respond only by noting that the *Aqua Products* plurality opinion was joined by five of the eleven judges participating in that matter, and only one dissent questioned the opinion's statement of the statutory scheme.  *See Aqua Prod., Inc.*, 872 F.3d at 1306–14 (O'Malley, J., joined by Newman, J., Lourie, J., Moore, J., and Wallach, J.).  When faced with a question closely related to the one we address today, a majority of the court declined to adopt an interpretation of § 318(a) that gives two separate operative meanings to the requirement that the Board determine "patentability" in the IPR context.  *Id.* at 1345–52 (Taranto, J., dissenting, joined in relevant part by Prost, C.J., Chen, J., and Hughes, J.).  Given this history, it is clear to me that *Aqua Products* is highly relevant to our resolution of this case.

B

My colleagues' conclusion that, when it comes to substitute claims, anything goes, is also contrary to the policy supporting the IPR system.  IPRs are meant to be an efficient, cost-effective means for adjudicating patent validity. *See* H.R. REP. NO. 112–98, pt. 1, at 48 (2011).  They are not intended to also serve as a means for full-blown examination.  Consistent with this, the legislative history is clear that substitute claims serve to preserve for the patentee the narrower patent right that is merited in view of the art.  *See Patent Quality Improvement: Post-Grant Opposition: Hearing Before the Subcomm. on Courts, the*

*Internet, and Intellectual Property of the H. Comm. on the Judiciary*, 108th Cong. 10 (2004) (statement of PTO General Counsel James A. Toupin: "By providing for the possibility of amendment of challenged claims, the proposed system would preserve the merited benefits of patent claims better than the win-all or lose-all validity contests in district court.").

The majority opinion opens substitute claims to an examination equivalent to that undertaken during patent prosecution, in an inter partes environment. The majority's reasoning requires, in effect, that the Board consider all manner of prior art (not just the limited categories mention in § 311(b)), as well as all other criteria normally addressed by an examiner, to fulfill its § 318(a) obligation prior to issuing new claims.[9]  Presumably, a petitioner will now be free to raise any of these issues in response to a patentee's motion to amend. The already mammoth task of examining claims in the context of an ex parte prosecution will be fully shifted to an inter partes, litigation driven proceeding that is overseen not by an examiner but by an

---

[9]   In stark contrast to the majority's position, the Precedential Opinion Panel recently made  clear that it does not view the Board as independently fulfilling an examinational function. *See Hunting Titan, Inc. v. Dynaenergetics Europe Gmbh*, No. IPR2018-00600, 2020 WL 3669653, at *4–6 (P.T.A.B. July 6, 2020) (holding that the Board should decide proposed substitute claims on grounds other than those raised by a petitioner in only rare circumstances).

Administrative Patent Judge.[10]   The inefficiencies of this process are apparent.[11]

Accordingly, in my view, the process the majority approves today runs in the face of the efficient resolution anticipated by Congress.   It also improperly places an examination process in the hands of an administrative judge.

## IV

This case was dead on arrival—there were no live claims remaining in the '960 patent.  I see the dead patent for what it is—a legal nullity incapable of supporting any further proceedings.  I would end the case with that revelation.  The majority, however, views the '960 patent as an opportunity and takes it.  It declares that dead patents can walk, at least as far as needed to die again on the same § 101 sword that killed it two years ago.  That sword, however, does not exist in the IPR context.  The Board can cancel claims and find proposed substitute claims

---

[10]   Given the majority's focus on reexamination proceedings, it is worth pointing out that, in those proceedings, an *examiner*, not an Administrative Patent Judge, takes the first pass at determining patentability.  *See* 35 U.S.C. § 305; MPEP § 2253

[11]   The inefficiency the Majority introduces is also unnecessary.  Substitute claims are not unexamined—they are narrower versions of claims that already went through examination, including under § 101.  *See* 37 C.F.R. § 42.121(a)(2); *Aqua Prod.*, 872 F.3d at 1314–15.  To the extent any defect exists in proposed substitute claims, they "remain subject to challenge in various future proceedings, including subsequent IPRs, ex parte reexaminations, district court litigations, or through the Director's ability to initiate an ex parte reexamination pursuant to 37 C.F.R. § 1.520." *Aqua Prod.*, 872 F.3d at 1315.

20                              UNILOC 2017 LLC v. HULU, LLC

unpatentable, certainly.  It simply does not have statutory authority to do so based on § 101.  Accordingly, I dissent.